## THE STATE ex rel. E. W. MANION et al. v. JOHN M. DAWSON, Circuit Judge.

In Banc, October 30, 1920.

1. **CERTIORARI: Common-law Writ.** In Missouri the writ of *certiorari* is the common-law writ, unmodified by statute. Its nature and scope and the proper use to be made of it are questions to be determined from the common-law principles and from the Missouri adjudications.

2. ———: **For Review of Judicial Action.** *Ceritorari* will lie for the review of judicial or quasi-judicial action, but not for the review of acts which are ministerial, legislative or executive in character.

3. ———: ———: **Character of Tribunal.** The general character of the acting body does not determine whether its action is judicial or legislative. Acts judicial in their nature are sometimes intrusted to ministerial or executive officers or bodies, and sometimes acts purely legislative, executive or ministerial in character are intrusted to courts of special or general jurisdiction; and the line of demarcation between legislative and judicial functions is not easy to draw.

4. ———: **Extending the Boundaries of Drainage District.** The extension by the circuit court of the boundary lines of a drainage

490

district organized in the circuit court under the Act of 1913, Laws 1913, pages 232 to 267, is the exercise of legislative power delegated to the circuit court by the Legislature, and being such a decree of the circuit court extending such boundaries cannot be reviewed by *certiorari*.

## *Certiorari.*

WRIT QUASHED.

*Kelso & Kelso, Perry S. Rader, S. J. & G. C. Jones* and *C. E. Gibbany* for relators.

(1) Secs. 2 and 40 of Circuit Court Drainage District Act of 1913 are *in pari materia* and must be read together; and when read and considered together, they mean that all the fundamental conditions for organizing a drainage district prescribed by Section 2 must be present before the court can render judgment extending the boundary lines of such a district to include other large tracts of land. Grimes v. Reynolds, 184 Mo. 688; Grimes v. Reynolds, 94 Mo. App. 584; Sales v. Barber Asphalt Pav. Co., 166 Mo. 677; Lewis-Sutherland on Statutory Construction, secs. 368, 443; Roth v. Gabbert, 123 Mo. 32; Litson v. Smith, 68 Mo. App. 393; State ex rel. v. Moore, 96 Mo. App. 431; State ex rel. v. Dearing, 173 Mo. 492; State ex rel. v. Fort, 180 Mo. 112; King's Lake Drain & Levee Dist. v. Jamison, 176 Mo. 557; Ewing v. Vernon County, 216 Mo. 692; State ex rel. v. Wiggins Ferry Co., 208 Mo. 622, 639; Keeney v. McVoy, 206 Mo. 67, 69, 74; Julian v. Kansas City Star Co., 269 Mo. 68; Bishop on Written Law, sec. 64; State ex rel. v. Chariton Drain Dist., 252 Mo. 360, 362; State ex rel. v. West, 272 Mo. 304. (2) The lands added to the Albany Drainage District by the judgment extending its boundary lines were not lands contiguous to said district, nor did the four extensions embracing said lands, together with the lands in the district as organized, constitute a contaguous body of swamp, wet or overflowed land.

Weld v. People, 227 Ill. 556; Lincoln County Bank v. Hopkins, 47 Kan. 582; Century and Standard Dictionaries, defining "contiguous;" Webster's New International Dictionary (1918); No. Pac. Ry. Co. v. Douglas County, 145 Wis. 291; Askell v. Commerce Ins. Co., 69 N. Y. 192; Bolen Coal Co. v. Ryan, 48 Mo. App. 515; Holston Salt & Plaster Co. v. Campbell, 89 Va. 396 Olson v. Fire & Marine Ins. Co., 35 Minn. 432; Raxedale v. Seip, 32 La. Ann. 435; Langlais v. Cameron, 201 Ill. 301; Pevereley v. People, 3 Park. Crim. (N. Y.), 59, 69; Ingersoll on Public Corporations, p. 151; Traux v. Pool, 46 Iowa, 256. (3) Sections 2 and 40 of the Act of 1913, considered together, mean that the boundary lines of the drainage district cannot be extended to include other large tracts of land except upon the petition of the owners of the majority of the acres to be added; therefore the circuit court had no jurisdiction to so extend the boundary lines of the Albany Drainage District as to add 11,039.22 other acres thereto, without the formal consent of the owners of any of them. Elsberry Drainage Dist. v. Harris, 267 Mo. 143, 148, 151; R. S. 1909, secs. 5500, 5570, 5760. (4) The judgment of the circuit court extending the boundary lines of the drainage district so as to include the lands of relators and other lands, without the consent of the owners of any of them, denied to relators the equal protection of the laws guaranteed, to them by the Fourteenth Amendment of the Constitution of the United States, in that it denied to the owners of a majority of the acres of the lands added the right by withholding their consent to prevent the extension, while Section 2 of the Act gives to the owners of a majority of the acres described in the articles of association the power to prevent the organization of a drainage district by witholding their consent, thus dividing a natural class into two classes, and administering the law in one way to one division of the class, and denying to the other subdivision, though alleged to be

in the same situation, equal privileges and immunities. Said judgment is therefore void. State v. Thomas, 138 Mo. 95; State v. Walsh, 136 Mo. 405, 407; Cooley on Constitutional Lim. (6 Ed.) secs. 481-483; State v. Julow, 129 Mo. 163, 176; Van Riper v. Parsons, 40 N. J. L. 1; State ex rel. v. Railroad, 195 Mo. 245; Gulf Colo. & S. F. Ry. v. Ellis, 165 U. S. 150; Barbier v. Connolly, 113 U. S. 31; State v. Haun, 61 Kan. 154; State ex rel. v. West, 272 Mo. 304; In re Drainage Dist. Buschling v. Ackley, 270 Mo. 157; Carder v. Fabius Drain. Dist., 262 Mo. 554; St. Jos. & Iowa Ry. Co. v. Shambaugh, 106 Mo. 566; Hopkins v. Council Bluffs Ry., 79 Mo. 100; Orrick School Dist. v. Dorton, 125 Mo. 439; Hunt v. Salisbury, 55 Mo. 310; State ex rel. v. Arnold, 38 Ind. 41; Knapp v. Kansas City, 48 Mo. App. 492; State ex rel. v. Wilder, 200 Mo. 105; Nishnabotna Drain. Dist. v. Campbell, 154 Mo. 157; State ex rel. v. Swearengin, 273 Ill. 630, 113 N. E. 166; State v. Loomis, 115 Mo. 307. If it be claimed that the Legislature can authorize the governing body of a public corporation to extend its boundary lines without the consent of the owners of the lands to be included, the answer is that the Albany Drainage District was a mere tentative organization, and the doctrine, even if anywhere upheld, has no application here, because no mere tentative or conditional corporation can extend its boudary lines. Sec. 37, Laws 1913, p. 253; In re Drainage District, Buschling v. Ackley, 270 Mo. 165; Carder v. Fabius Drainage Dist., 262 Mo. 554, 556, 559; Ry. Co. v. Shambaugh, 106 Mo. 566; City of Hopkins v. Council Bluffs Ry. Co., 79 Mo. 100; Orrick School Dist. v. Dorton, 125 Mo. 442, 444; State ex rel. v. Arnold, 36 Ind. 41; People ex rel. v. Swearengin, 273 Ill. 630. (5) Precedent jurisdictional facts necessary to authorize a circuit court to extend the boundaries of a district were not present in this case, namely (a) the reclaiming of the lands added was not alleged or adjudged to be for

a public purpose, and (b) the judgment authorizes petitioners to appropriate relators' land for rights of way without describing what lands are to be taken or naming their owners, and thereby denies to relators due process of law, in violation of Section 30 of Article 2 of the Constitution of Missouri. Laws 1913, p. 233, sec. 2; Morrison v. Morey, 146 Mo. 563; Cooley on Const. Lim. (6 Ed.) p. 475; Gaines v. Buford, 1 Dana (31 Ky.), 484; Gifford Drain. Dist. v. Shroer, 145 Ind. 578, 579; In re Theresa Drainage Dist., 90 Wis. 301; Kinne v. Bare, 68 Mich. 625; In re Drainage Dist., 270 Mo. 171; Elsberry Drain. Dist. v. Harris, 267 Mo. 153; Nishnabotna Drain. Dist. v. Campbell, 154 Mo. 157; Chi. R. I. & Pac. Ry. v. Young, 96 Mo. 39; State ex rel. v. West, 272 Mo. 304; Council Bluffs Ry. Co. v. Campbell, 62 Mo. 585; Ellis v. Pac. Ry. Co., 51 Mo. 200; Leslie v. St. Louis, 47 Mo. 474; St. Louis v. Gleason, 93 Mo. 33, 38; City of Tarkio v. Clark, 186 Mo. 286, 298; United States v. Reed, 56 Mo. 565. (6) The board of supervisors were without authority to file a petition to extend the boundaries of the Albany Drainage District before the surveys contemplated by Section 9 of the Act of 1913 had been made, and a plan for reclamation had been adopted by the board as provided by Section 10 and filed with the clerk of the circuit court as provided by Section 12. Until such plan had been adopted by the board and filed with the circuit clerk the court acquired no jurisdiction of a petition to extend the boundary lines of the district. Laws 1913, secs. 9, 10, 12 and 40, pp. 237, 238, 254; Elsberry Drain. Dist. v. Harris, 267 Mo. 152; People v. Swearengen, 273 Ill. 630; People v. Darst, 265 Ill. 359; Wayne Drain. Dist. v. Boggs, 262 Ill. 338; Tennessee Drain. Dist. v. Moye, 258 Ill. 296; Kinne v. Bare, 68 Mich. 625; Simpson v. Board of Supervisors, 180 Iowa, 1337; George v. Middough, 62 Mo. 551; Bertholf v. O'Reilly, 74 N. Y. 519; Hennig v. Stead, 138 Mo. 434;

Hunt v. Searcy, 167 Mo., 180; Scott v. McNeal, 154 U. S. 34. (7) The judgment by which the circuit court added 11,039.22 acres of land to a tentatively formed drainage district of 5,704.06 acres, upon the petition of the supervisors alone, without the consent of the owners of any of said lands so added, and against the solemn protest of the owners of 3,743.49 acres thus added, is so unreasonable as to be an abuse of the court's power, and should be quashed on the grounds of unreasonableness. McClesky v. State ex rel., 23 S. W. (Tex.) 518; Heinemann v. Sweat, 130 Ark. 70; Coffman v. St. Francis Drainage Dist., 83 Ark. 54; French v. Barber Asphalt Pav. Co., 181 U. S. 324; Kelly v. Meeks, 87 Mo. 396; Corrigan v. Gage, 68 Mo. 544; Copeland v. St. Joseph, 126 Mo. 431; State ex inf. v. Kansas City, 233 Mo. 162; State ex rel. v. Mining Co., 262 Mo. 504; City of Plattsburg v. Riley, 42 Mo. App. 23; City of Cape Girardeau v. Riley, 72 Mo. 223; City of Tarkio v. Cook, 120 Mo. 9; Elsberry Drain. Dist. v. Harris, 167 Mo. 148; State ex rel. v. Birch, 186 Mo. 219; R. S. 1909, sec. 5760.

*D. D. Reeves* and *J. W. Peery* for respondent.

(1) The circuit court in fixing boundary lines of a drainage district, or in extending said boundaries, acts as a legislative agent. That part of its duties as fixed by the Act of 1913, is not judical, but legislative. Birmingham Drain. Dist. v. Railroad, 274 Mo. 153. (2) It is well settled that *certiorari*, like a writ of error, will lie only where the action sought to be reviewed is judicial in character. It will not lie if such action is the exercise of a ministeral or legislative function of government. State ex rel. v. County Court, 237 Mo. 469; State ex rel. v. Reichmann, 239 Mo. 112; Lehigh Co. v. Inc. Town of Lehigh, 136 N. W. 934, 156 Iowa, 386. The division of a municipality into wards being a legislative matter, though delegated to the council of the city, the council's action can not be investigated by *certiorari*. Fitzgerald

v. Curley, 220 Mass. 503; Gas Co. v. Greenville, 165 Mich. 135; Red River Co. v. Grand Forks, 27 N. D. 8; Tiger v. Creek Co. Court, 45 Okl. 701; Teeny v. City of Columbia, 48 Wash. 150. (3) In this State the writ of *certiorari* is governed entirely by the rule of the common law and brings up for review only the record proper of the proceeding complained of. The court can only determine whether the inferior court or tribunal acted without jurisdiction, or exceeded its jurisdiction or rendered a judgment which it had in law no right to render. State ex rel. v. Goodrich, 257 Mo. 47; Ward v. Board of Equalization, 135 Mo. 319; State ex rel. v. Reynolds, 190 Mo. 588; State ex rel. v. Casy, 210 Mo. 246; State ex rel. v. Gilbert, 164 Mo. App. 142; State ex rel. v. Ross, 177 Mo. App. 228; State ex rel. v. Reynolds, 257 Mo. 35; State ex rel. v. Ellison, 263 Mo. 514; State ex rel. v. Robertson, 262 Mo. 539; State ex rel. v. Reynolds 213 S. W. 807. (4) It is the well established law of this State that the mere fact that a person or his property has been included in a drainage district, in no manner affects his rights, provided his property has not been benefited or damaged. And this as shown by the decisions is one of the controlling reasons why this court has held that neither an appeal nor writ of error would lie from a judgment incorporating a drainage district, or from a judgment extending the boundaries of such district. In re Birm. Drain. Dist., 270 Mo. 164; Brim. Drain. Dist. v. Railroad, 274 Mo. 140; In re Wil. Drain. Dist., 216 S. W. 530. And for the same reason it would seem a writ of *certiorari* would not lie. If his rights are not affected, there is no more reason why he should be entitled to a writ of *certiorari,* than to a writ of error, or an appeal. (5) This proceeding was had in strict conformity to Section 40 of the Act of 1913 (Laws 1913, p. 264). Section 2 of that act relates to an entirely different matter. There is nothing contradictory in the provisions of these sections, when the purpose of each is considered. Sec-

tion 2 relates to the original formation of' the district, Section 40 relates to an extension of boundaries, and is complete in itself. Not only so but it provides a usual orderly and lawful method to effect that purpose. It is too well established to admit denial that in extending boundaries the municipal corporation may take the initiative, and bring in other lands without the consent of the owners. And this court has applied this rule and doctrine to drainage districts. Drainage Dist. v. Turney, 235 Mo. 90. The above case has been many times cited with approval by this court, and also by the Supreme. Court of the United States. Houck v. Little River Dist.', 239 U. S. 261, 60 L. Ed. 273. The record in this cause complies with and answers every jurisdictional requirement which this court has held to be necessary to a valid judgment for the extension of the boundaries of a drainage district, under Section 40 of the Act of 1913, or under prior laws. Elsberry Drain. Dist. v. Harris, 267 Mo. 152; Drain. Dist. v. Turney, 235 Mo. 95. (6) As to the constitutional question attempted to be raised by relators in the first paragaph, in point V, pp. 118-9 of his brief, we think it is sufficiently answered by what this court has said on a former occasion. Drain. Dist. v. Turney, 235 Mo. 93.

WILLIAMSON, J.—This is an original proceeding by *certiorari* in this court, against the respondent as judge of the Gentry County Circuit Court. The object of the proceeding is to quash the record of that court in a proceeding for the extension of the boundary line of the Albany Drainage District.

The Albany Drainage District obtained a preliminary decree of incorporation at the March Term, 1917, of the court aforesaid. The proceeding was under the Act of 1913, Laws 1913, pages 232 to 267 inclusive, with reference to the incorporation of drainage districts by ciruuit courts. Thereafter, in July, 1918, the board of supervisors of the drainage district filed in the office of

284 Mo.—32

the Circuit Clerk of Gentry County, a petition asking that the boundary line of the district be extended so as to include lands not included in the original articles of association and decree. Omitting formal allegations, and the description of the lands asked to be included, this petition is as follows:

"Petition of the Board of Supervisors of the Albany Drainage District, to amend the decree incorporating said district by changing the boundary lines thereof so as to include lands not described by or included in the articles of association and decree of this court incorporating said district.

"The undersigned petitioners state that they constitute and are the Board of Supervisors of the Albany Drainage District and make and file this petition for and on behalf of said drainage district.

"These petitioners state that all of the lands and other property hereinafter described, owned by divers persons as hereinafter stated, are swamp, wet and overflowed lands and lands subject to overflow; that all of said lands and other property lie adjacent to the lands of the Albany Drainage District as described in the decree of this court incorporating said drainage district; that all of said lands are greatly in need of drainage to protect them from overflow and the evil effects of water; that the chief engineer of the Albany Drainage District has prepared a plan of reclamation for said drainage district, which the board of supervisors of said district will adopt and execute, and that all of the lands and other property hereinafter described will be benefited, improved and reclaimed, in whole or in part, by the execution of the plan of reclamation hereinbefore mentioned, and that no feasible and adequate plan of reclamation can be devised, the execution of which will reclaim and protect the lands now in said district from the evil effect of water, which will not also, in whole or in part, protect from overflow, and reclaim and protect from the evil effect of water the land hereinafter described; that the

several tracts of land and other property hereinbefore
mentioned, together with the individual ownership of
said lands and property are as follows, to-wit:

[Here follows a description of the lands.]

"Wherefore these petitioners pray the court to so
amend its decree incorporating the Albany Drainage
District, made and entered of record by this court on the
22nd day of May, 1917, as to include in said district the
lands and other property hereinbefore described, and
to so change and extend the boundary lines of said dis-
trict that they will when changed and extended be bound-
ary lines as hereinbefore mentioned and described; and
these petitioners further pray the court to appoint three
commissioners, who shall be freeholders residing within
the State of Missouri, and who shall not be landowners
in said district nor of kin within the fourth degree of
consanguinity to any person owning land in said district,
to appraise the lands that shall be taken for rights-of-
way, holding basins and other works, and to assess the
benefits and damages to any and all lands, public high-
ways, railroad and other property already in the dis-
trict or that may be annexed to the district by the change
of boundary lines herein prayed for."

The statutory notice of the filing of this petition
was given, objections were filed by a large number of
the landowners, all of which were overruled by the court,
except as to a relatively small portion of the lands asked
to be included, and at the December Term, 1918, the court
entered the following decree:

"Now, on the 9th day of December, 1918, this cause
having been heretofore heard by the court, upon the peti-
tion and objections herein filed, and having heretofore
been submitted to the court, and by the court taken under
advisement, and now on this day, being the first day of
the regular December, 1918, term of this court, this cause
coming on to be decided, the court doth find that due
notice of the filing of the petition herein has been given,
by publication, for the time and in the manner provided

by law, that all of the lands and other property described in said petition are swamp, wet and overflowed lands and lands subject to overflow; that all of said lands and other property lie adjacent to the lands of the Albany Drainage District as described in the original decree of this court incorporating said drainage district; that all of said lands are greatly in need of drainage to protect them from overflow and from the evil effect of water; that the chief engineer of the Albany Drainage District has prepared and the board of supervisors of said district have adopted a plan of reclamation for said district which is a proper, reasonable and practical plan for the reclamation of the lands of said drainage district; that all of the lands described in plaintiff's petition, except such lands therein described as lie in sections twenty-three (23) and twenty-four (24), in township sixty-two (62), of range thirty-two (32), are of such character and are so situated that the execution of the plan of reclamation adopted by the board of supervisors of said district will greatly benefit said lands, and will reclaim, in whole or in part, said lands from overflow and the evil effects of water, and that owing to the character and situation of such lands, and the intimate drainage conditions and relations existing between such lands and the lands of said district, no adequate plan of reclamation can be devised which will not in whole or in part reclaim and protect, such lands from the evil effects of water.

"The court further finds that the lands described in plaintiff's petition, lying in sections twenty-three and twenty-four in township sixty-two of range thirty-two, will not be reclaimed and protected from overflow and the evil effects of water by the execution of the plan of reclamation adopted by the board of supervisors of said district.

"It is therefore by the court ordered, adjudged and decreed that the boundary lines of the said Albany Drainage District, as established by the decree of this court

incorporating said district, be amended and extended so as to include all·of the lands described in plaintiff's said petition, except the lands described in said petition lying in said sections twenty-three and twenty-four, said lands hereby included within the boundary lines of said drainage district, and the ownership of the several tracts thereof being as follows, to-wit . . .

"That for the purpose of including within the boundary lines of the said Albany Drainage District, the lands and other property hereinbefore described, the decree of this court organizing said district is hereby amended and the boundary lines therein changed and extended so that when changed and extended so as to include said lands and other property hereinbefore·described, the changed, amended and extended boundary lines of said district shall be and are hereby adjudged and decreed to be as follows, to-wit: . . .

"It is further ordered and adjudged that Charles L. Garrell, H. H. McClurg and William Blackford, three freeholders residing within the State of Missouri, and who are not owners of land in said district, nor of kin within the fourth degree of consanguinity to any person owning land in said district, be and they are hereby appointed commissioners to appraise the lands that shall be taken for rights of way, holding basins and other works of said district, and to assess the benefits and damages to any and all lands, public highways, railroad and other property, in the original district, and which have been annexed to said district by this judgment and decree, from the execution of the plan of reclamation adopted by the board of supervisors of said drainage district."

Thereafter, in due time the objectors filed motions for a new trial and in arrest of judgment, both of which were overruled, and objectors also prepared and filed a bill of exceptions, which was duly signed and made a part of the record of the trial court. The objectors thereupon filed an affidavit and application for an appeal. The lower court denied an appeal, and after ineffectual

efforts to obtain an order allowing the appeal in this court, the objectors have brought this proceeding.

Respondent's return consists of the decree incorporating the drainage district, the petition and articles of association praying for the incorporation of the district, and a complete transcript of the record of the proceedings to extend the boundary lines of the district, including the bill of exceptions.

The application for the writ of *certiorari* states, in substance, the incorporation of the drainage district, alleges that the original petition asked for the incorporation of a district containing about 5704.6 acres of land; and that the petition was signed by the owners of 3085.34 acres of said land; that a decree of incorporation was duly granted, a board of supervisors elected, and that the board of supervisors thereafter filed a proceeding for the extension of the boundary lines of the district so as to include 11,508.79 additional acres of land; that the decree of the trial court extended the boundary lines so as to include 11,039.22 acres, thereby creating a district of 16,743.49 acres. It is further alleged in the application for the writ that the lands so included are not one contiguous body of land, but include an extension northward from the north line of the district up the east fork of Grand River, for a distance of four miles, and an extension southward from the south line of the district along Grand River about two and three-fourths miles, and westward from the southwest corner of the district up the west fork of Grand River, and northward about seven miles up the middle fork of Grand River. It is further alleged in the petition that no plan for the reclamation of the lands embraced in the drainage district had ever been prepared and adopted as required by Section 12 of the Laws of 1913, prior to the filing of the petition for extension; that no plan of reclamation was adopted until during the trial of the action for an extension of the boundaries of the drainage district; that none of the landowners whose lands were thus sought to

be included consented that their lands might be annexed
to the district; that the lands proposed to be annexed
are not adjacent to the lands embraced in the district;
that the addition of these lands was not necessary in
order to drain the lands already embodied in the district;
that the proceeding for the original incorporation of the
Albany Drainage District was undertaken after the pro-
moters of that scheme learned that they could not obtain
the consent of the owners of the majority of the lands in-
tended to be included in the original plan for a drainage
district, and that thereupon the promoters had incorpo-
rated the smaller district with the intent and purpose of
thereafter extending its boundaries and taking in the
lands of the objectors without their consent, and against
their will, and that for the reason stated the trial court
was without jurisdiction to hear or grant the petition to
extend the boundary lines so as to include the lands be-
longing to the objectors.

Other grounds are also set forth, but those stated
will give a fair idea of the nature of this proceeding, and
of the principal reasons upon which it is based.

Respondent has filed a motion to quash the writ here-
tofore issued in this proceeding, upon the following
grounds:

"1.   Because the writ of *certiorari* was improvident-
ly issued.

"2.   Because the record filed in this court in obe-
dience to the said writ shows that the Circuit Court of
Gentry County had complete jurisdiction of the proceed-
ing complained of; and that all of its proceedings therein
were within its jurisdiction and according to law; and
within the act of the Legislature under which the proceed-
ing was instituted, conducted and had.

"3.   Because the record filed in this court in
obedience to said writ fails to show any want of jurisdic-
tion in the said circuit court to enter the decree complain-
ed of; and fails to show that said court in said proceed-
ing or in the entering said decree acted in excess of its
lawful jurisdiction.

"4. Because the Circuit Court of Gentry County in extending, fixing, and determining, the boundaries of said drainage district and in entering the decree therefor complained of by relators in this proceeding, acted not in a judicial, but in a legislative capacity, as a mere legislative agent; and its action in that behalf was not judicial, nor quasi-judicial, but was legislative in character, and cannot be reviewed in this proceeding."

Upon this record the cause has been briefed, argued and submitted. Such other matters of fact as may be necessary, if any, will be found in the body of the opinion.

It is asserted in behalf of respondent that *certiorari* will not lie in this instance, for the reason that the action sought to be reviewed is non-judicial in character. This contention is vital, and, if sustained, disposes of this case. The question is a familiar one in this and many other jurisdictions.

*Certiorari* is a remedy narrow in its scope and inflexible in its character. It is not a general utility tool in the legal workshop. It cannot be made to serve the purpose of an appeal or writ of error. All that can be done under it is either to quash or to refuse to quash the proceedings of which complaint is made. In the case at bar, we may either quash the record of the trial court or quash the writ. No other course is open to us. Whether the one action or the other shall be taken, depends upon the character of the action which we are called upon to review. Upon these statements the authorities, except in sporadic instances, are practically agreed. In this State, the writ of *certiorari* as applied in this case, is the common law writ, unmodified by statute. Its nature and scope and the proper use to be made of it, are questions to be determined from the common law principles and from our own decisions. In an early case, BLISS, J., speaking for the court in a *certiorari* proceeding brought to quash the record of the County Court of Saline County in subscribing for stock in a railroad company, said:

"Before considering any other question, the preliminary one must be decided, whether *certiorari* will lie in a case of this kind. 'A *certiorari* is an original writ issued out of chancery or the King's Bench, directed in the King's name, to the judges or officers of inferior courts, commanding them, to return the records of a cause depending before them to the end that the party may have the more sure and speedy justice,' [Bac. Abr., Certiorari, A.] The matter not being regulated by statute in Missouri, either as to the cases in which this writ may issue or the practice under it, we are left entirely to the general law. The writ issues only to inferior courts and to review only judicial action. Was, then, the action of the County Court of Saline County, in subscribing to the stock of this railroad company and issuing bonds, a judicial action? Judicial action is an adjudication upon the rights of parties who in general appear or are brought before the tribunal by notice or process, and upon whose claims some decision or judgment is rendered. It implies impartiality, disinterestedness, a weighing of adverse claims, and is inconsistent with discretion on the one hand—for the tribunal must decide according to law and the rights of the parties—or with dictation on the other, for in the first instance it must exercise its own judgment under the law, and not act under a mandate from another power." [In the matter of the Saline County Subscription, 45 Mo. l. c. 53.]

The writ was quashed. This is an oft-cited case, and from the general principle there enunciated we have never departed, though in specific instances it is not always easy to harmonize the action of the court with the general rule thus laid down. The principle is reiterated in State ex rel. v. County Court, 237 Mo. 460, l. c. 469; State ex rel. v. Harrison, 141 Mo. 12, l. c. 18, and is expressly stated or impliedly recognized in many other cases. It is also the general rule in other jurisdictions. [11 C. J. sec. 67, p. 120, and cases there cited.]

The practical difficulty comes, of course, in applying this general principle to the facts in a particular case. *Certiorari* will lie for the review of judicial or quasi-judicial actions, but not for the review of actions which are ministerial, legislative or executive in character. The general character of the acting body does not determine the question. Acts judicial in their nature are sometimes intrusted to ministerial or executive officers or bodies, and, at times, acts purely legislative, executive or ministerial in their character are intrusted to courts of general or special jurisdiction. The line of demarcation between legislative, executive and judicial functions is not easy to draw. These functions shade into one another as imperceptibly as the mountain merges into the valley, or the river into the sea.

In the case of In re Birmingham Drainage District, 274 Mo. 140, a somewhat similar question arose. The court said, at page 151:

"To accomplish the single purpose of putting in action a drainage district required not only the enactment of a statute fixing the extent, purpose and general powers of the district which is a purely legislative function, but the appropriation of private property for such purpose and determining the damage therefor by jury trial, which are distinctly judicial functions. Between these lies 'no man's land,' a region of action unclassified by the terms of the Constitution."

The specific question there involved was the assessment of benefits and damages, and this was held to involve the exercise of judicial functions, but it will be noted that it was also held in that case that the matter of fixing the boundaries of a drainage district was purely legislative in character. To the same effect is the case of Houck v. Little River Drainage Dist., 248 Mo. 373, l. c. 386-387, wherein we said:

"It is safe to say that the doctrine is firmly established in this State that the Legislature, acting within its constitutional powers, may fix the territorial limits

of special taxing districts, and may also fix the actual or maximum amount of special assessments, which it may place at a level rate, founded upon a unit of area or frontage, or at a rate founded upon a proceeding to ascertain the actual benefit accruing to each particular tract; or it may delegate any or all these powers to an appropriate agency to be chosen or created by it. [Little River Drainage Dist. v. Railroad, supra; Columbia Bottom Levee Company v. Meier, supra; Meier v. St. Louis, 180 Mo. 391, 408, and cases cited; Mound City Land & Stock Company v. Miller, 170 Mo. 240; St. Joseph to use v. Farrell, 106 Mo. 437; Prior v. Construction Co., 170 Mo. 439, 448 and cases cited.]''

If the Legislature could itself fix the boundaries of drainage districts, or intrust that power, legislative in its nature, to other bodies, judicial or non-judicial in their general character, and if, as these and numerous other cases in this State, hold, the delimitation of drainage districts is legislative in character, no matter by whom such boundaries are fixed, it is clear that the method of fixing such boundaries whether by an original decree of incorporation or by extension proceedings, is wholly immaterial. In either event it is a legislative act, and therefore not subject to review by our writ of *certiorari*. The bare creation of a drainage district is, after all, simply the creation of a district within which certain taxes may be levied, by certain designated agencies and for certain specified purposes. To this extent a drainage district is on a parity with any other taxing district. It is plain, on principle, that the Legislature if it saw fit to do so might divide the entire State into taxing districts for the purpose of levying an income tax, for example, or for general taxation purposes. In so doing it is also palpable that the Legislature might fix the boundaries of such districts, or it might intrust that duty to subordinate agencies. The subordinate agencies so designated and empowered may be the people living within the territory to be embraced in such dis-

trict, and the action necessary to create the district may be informal in the extreme, as witness the provisions for forming new school districts, for dividing or consolidating existing school districts, or for changing the boundary lines thereof, as regulated by Artcle 3 of Chapter 106, Revised Statutes 1909. The mere fact that the lands of the relators in this case have been incorporated into the Albany Drainage District does not, *ipso facto,* in any manner affect relator's rights in the premises, so long as their property has neither been benefited nor damaged.

"From this it is evident that it is the taking or damaging of the property, and not the incorporation of the district that affects the owners' rights." [In re Drainage Dist.; Buschling v. Ackley, 270 Mo. 157, 1. c. 164.]

See also cases cited in the Ackley case, supra, Further authorities to the same effect might easily be cited.

We therefore hold that *certiorari* does not lie under the facts now before us, according to the doctrine prevailing in this State.

Having reached this conclusion, it becomes unnecessary to discuss numerous important questions presented in the exceptionally able briefs of counsel both for relators and respondent.

For the reasons stated, the writ of *certiorari* heretofore issued in this cause should be quashed. It is so ordered. All concur, except *Woodson, J.,* absent.