STATE of Missouri ex rel. Percy M. LUDLOW, Ann Rice Ludlow, and Continental Oil Company, a Corporation, Respondents,

v.

William F. GUFFEY, as Mayor of the City of Webster Groves, a Municipal Corporation; William F. Guffey, Ward Ficke, Harold E. Knight, Benjamin E. Thomas, Charles Moran, John H. Carter, and Earl Salveter, as Members of the City Council of the City of Webster Groves, a Municipal Corporation; Frank C. Huntsman, as Building Inspector and Building Commissioner of the City of Webster Groves, a Municipal Corporation; and E. H. Healy, as City Clerk of the City of Webster Groves, a Municipal Corporation, Appellants.

No. 45617.

Supreme Court of Missouri,

En Banc

Nov. 12, 1957.

Green, Hennings, Henry & Evans, by J. Porter Henry, Robert D. Evans, St. Louis, for appellants.

Fordyce, Mayne, Hartman, Renard & Stribling, Joseph R. Long, Harold A. Thomas, Jr., St. Louis, for respondents.

COIL, Commissioner.

Mandamus to compel the building commissioner, other city officials, and councilmen of Webster Groves, a municipal corporation, to issue to relators building and occupancy permits required by a city ordinance. After a trial on stipulated facts a peremptory writ was ordered and the officials have appealed.

Percy M. Ludlow and his wife, Ann, owned a lot 122'8" x 82'9" at the southeast corner of Lockwood and Jefferson in

Webster which they had contracted to sell to relator, Continental Oil Company, a corporation, conditional upon the issuance by Webster of the necessary permits to allow the erection there of a filling station. The question is whether certain sections of Webster's zoning ordinance are valid, or unconstitutional and void as the trial court held.

Webster's ordinance No. 5728, approved February 23, 1953, is a comprehensive zoning plan enacted pursuant to the statutes delegating a portion of the state police power to city and town legislative bodies, viz., Sections, 89.010–89.140 RSMo 1949, V.A.M.S. The City Council divided Webster into eight districts, lettered from A to E. The three A and the B districts were residential, the C–1, C, and D districts were commercial, and E district was industrial.

Filling stations were not among specifically named uses permissible in any of the eight districts and were specifically excluded from D commercial and E industrial, but were permitted in C and D commercial and E industrial upon issuance of a special permit by the City Council. The corner in question is in C commercial district. Section 9 of the ordinance contains C commercial district regulations. That section provides, "A building or premises may be used only for the following purposes"; then follow 39 numbered specific uses. Following the number 40 is: "For additional use regulations see Section 13." Section 13 provides: "The City Council may, by special permit after public hearing, authorize the location of any of the following buildings or uses in any district from which they are prohibited by this ordinance." Then follow twelve numbered "buildings or uses" including, as number 11, gasoline and oil filling stations, restricted, however, to C and D commercial districts and E industrial district. The ordinance then provides: "Before issuance of any special permit for any of the above buildings or uses, the City Council shall refer the proposed application to the City Plan Commission, which Commission shall be given sixty (60) days in which to make a report regarding the effect of such proposed building or use upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare. No action shall be taken upon any application for a proposed building or use above referred to until and unless the report of the Plan Commission has been filed; provided, however, that if no report is received from the Plan Commission within sixty (60) days, it shall be assumed that approval of the application has been given by the said Commission."

Thus, under the provisions of ordinance 5728, the erection and operation of a filling station within any of Webster's eight districts were not permitted, except in districts C, D, and E if the City Council granted a special permit therefor in accordance with the procedure set forth in Section 13 above.

On May 11, 1954, relators applied in writing to the Webster City Council for a special permit under Section 13 for the erection of a filling station on the property. The City Council referred the application to the City Plan Commission and, at a special meeting on May 28, 1954, the Commission voted to recommend to the Council that the permit be granted (with some restrictions on the scope of the business to be conducted at the filling station). On July 1, 1954, the City Council again referred the application to the City Plan Commission for further study. On July 16, 1954, the Commission held a public hearing on the application, studied the question until August 3, 1954, and then made its written report to the City Council detailing (as required by Section 13) the effect, in its opinion, of the proposed filling station "upon the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare." That report also disclosed that the City Plan Commission had received advice

from city planning specialists in preparing its report. The Commission recommended to the City Council that relators' application be denied.

The City Council's minutes for August 5, 1954, show that relators' application for a special permit was considered; that the City Plan Commission had held a public hearing, had duly considered the evidence pro and con pertaining to the application, and had recommended that the special permit be denied; that the City Council had held a public hearing, had duly considered the evidence in support of and opposed to the application, had duly considered the report and recommendation of the City Plan Commission, and thereafter voted 6 to 1 to deny the special permit.

On March 30, 1955, relator Continental Oil Company applied to appellants Huntsman as building commissioner and Healy as city clerk for building and occupancy permits for the erection of and occupancy of a gasoline and oil filling station on the property in question. Plans and specifications which complied in all respects with the Webster building code accompanied that application. The building and occupancy permits were denied on the sole ground that a special permit had not been issued pursuant to the provisions of Section 13 of ordinance 5728.

As we have noted, Webster Groves enacted its zoning ordinance pursuant to the police power delegated to its City Council by Sections 89.020 et seq. RSMo 1949, V.A. M.S. Those sections provided that Webster's Council could zone comprehensively to promote the health, safety, morals, or general welfare of the community and that it could, for those purposes, divide the city into districts and regulate and restrict the location and uses of buildings therein in accordance with a comprehensive zoning plan, "designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding

of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements." And the City Council was empowered to and did provide for the manner of enforcement of such boundaries, restrictions, and regulations it had established.

By reason of the foregoing and by reason of the contentions of the parties here, it must be taken as tacitly conceded, for the purposes of this case, that the provisions of the ordinance excluding from Webster Groves all filling stations except by special permit in three of the eight districts bore a natural relation to the purposes for which the comprehensive zoning plan was enacted. That is to say, the Webster Council's determination that in none of the eight districts, except C and D commercial and E industrial, should a filling station be permitted to be built or operated and then only by special permit, was not arbitrary or unreasonable but, on the contrary, constituted a proper part of Webster's comprehensive zoning system and was clearly related to the established purpose to be accomplished by the exercise of Webster's police power.

The questions are whether Section 13 needed to and, if so, whether it did prescribe sufficient standards by which the City Council would determine the basis upon which a special permit for a filling station or otherwise prohibited use would be issued or denied so that its discretion in that respect would be exercised on a uniform basis.

First, then, did Section 13 need to prescribe standards or, otherwise stated, was Webster's City Council acting in a legislative or an administrative capacity when it acted on an application for a special permit? Appellants cite cases from other jurisdictions which make the necessity for the inclusion in an ordinance of standards and guides for the body empowered to issue or

deny a special permit, depend upon whether the dispensing power is retained in the City Counsel, or whether that power is delegated to a body other than the City Council. See: Green Point Sav. Bank v. Board of Zoning Appeals, 281 N.Y. 534, 24 N.E.2d 319; Larkin Co. v. Schwab, 242 N.Y. 330, 151 N.E. 637; Small v. Moss, 279 N.Y. 288, 18 N.E.2d 281; Kramer v. Mayor and City Council of Baltimore, 166 Md. 324, 171 A. 70; Marquis v. City of Waterloo, 210 Iowa 439, 228 N.W. 870. In the above-cited cases and others, the theory seems to be that no standards or guides need be set forth in an ordinance which provides that the issuance or denial of a permit remains in the legislative body, at least, in those cases where the matter of permission is one affecting the safety of persons and property. However, while the element of safety of persons and property seems to have been a consideration in the above-cited cases, some of them, at least, dealt only with the right to locate and operate a gasoline service station as in the instant case. So that safety of persons and property was no more involved in those cases than in the instant case, and, of course, safety of persons and property is always involved in the operation of an establishment wherein flammable liquids are stored or dispensed. The essential holding of those cases, for our purposes, is that if the ordinance in question provides that a special permit for a filling station shall be issued or denied by the City Council, i. e., by the legislative body, there need be no standards in the ordinance for the guidance of the dispensing power. It has been said that the reason for that conclusion is because the legislative body had, in the first instance, the power and discretion to have determined the conditions, if any, under which filling stations would be permitted in certain districts, and that the legislative body simply retained that power and discretion which it always had.

Relators contend that our cases make clear that the Missouri rule is to the contrary. Appellants, conceding that there is language in our cases which, standing alone,

supports relators, say the expressions in such cases were obiter, because, in each instance, the court was dealing with an ordinance which had in fact delegated the power to grant or refuse a permit to an administrative body. See, for example, State ex rel. Triangle Fuel Co. v. Caulfield, 355 Mo. 330, 196 S.W.2d 296, where, at page 297, the court recognized as applicable (to a situation in which the dispensing power had been delegated to an administrative officer) the rule set forth in 43 C.J., § 258, p. 256, which contained the language: "But the grant or refusal of such permit cannot be left to arbitrary discretion, *either of the council or governing body,* or of some municipal board or official." (Present writer's italics.) See, also, 62 C.J.S., Municipal Corporations, §§ 166, 167. But relators say that, in any event, the decisive fact is that under Section 13 the City Council acted and acts in an administrative rather than in a legislative capacity, so that, if true, further discussion of what might be the law as to a power retained by a legislative body is useless.

 It is our view that relators are correct in their contention that the City Council acted and acts administratively when it enforces legislatively enacted Section 13 of the ordinance. True, the City Council had the *power and the discretion* to prescribe in the ordinance the exact conditions under which a special permit would be issued or denied for a particular location *or use in a particular district.* But the Council did not exercise that power and discretion. On the contrary, it chose to delegate a discretionary enforcement power. (Section 13 provides that the City Council *may* authorize, etc. That power is permissive and thus implies a right to exercise discretion. State ex rel. Mackey v. Hyde, 315 Mo. 681, 691, 286 S.W. 363, 366 [4, 5].) The Council's *legislative* power and discretion was exhausted when it decided to provide in the ordinance for the *delegation of the discretionary power to enforce* the Council's regulation. The fact that the delegator and the recipient was the same

body is not determinative of the capacity in which the recipient acted. That is to say, the fact that the Webster City Council was generally a legislative body does not determine that it could not or did not act administratively when it was engaged in the enforcement (an administrative function) rather than in the enactment (a legislative function) of a zoning regulation. See: State ex rel. Manion v. Dawson, 284 Mo. 490, 506, 225 S.W. 97, 100.

■ Relators cite and rely upon several Missouri cases which announce the rule applicable to the delegation of legislative discretionary power to an administrative body. That rule and its exceptions are accurately stated in Lux v. Milwaukee Mechanics' Ins. Co., 322 Mo. 342, 15 S.W.2d 343, at page 345: "The general rule is that any ordinance which attempts to clothe an administrative officer with arbitrary discretion, without a definite standard or rule for his guidance, is an unwarranted attempt to delegate legislative functions to such officer, and for that reason is unconstitutional. * * * The exceptions to the general rule are in situations and circumstances where necessity would require the vesting of discretion in the officer charged with the enforcement of an ordinance, as where it would be either impracticable or impossible to fix a definite rule or standard, or where the discretion vested in the officer relates to the enforcement of a police regulation requiring prompt exercise of judgment."

We think the instant case comes within neither of the above-stated exceptions as such. (As will appear, we later discuss the impracticability of fixing a more definite standard, but in our view that consideration is a factor indicating compliance with the general rule rather than a necessity for an exception.) The question is whether Section 13 of the ordinance does prescribe a sufficient standard, i.e., a uniform rule of action to govern the City Council in the exercise of its administrative discretion to determine when and under what circumstances to grant or deny a special permit for a filling station or whether the ordinance confers on the Council an unlimited, uncontrolled, and arbitrary discretion to grant or refuse a special permit.

A reasonable construction of the provisions of Section 13, heretofore set forth in full, together with the reasonable intendments and implications therein, justify stating the provisions of the section thusly: No filling station shall hereafter be erected or operated in the City of Webster Groves except in C, D, or E districts, if the City Council in its discretion so authorizes in accordance with this procedure:

1. One desiring to build or operate a filling station in a C, D, or E district shall apply to City Council for a special permit to so do.

2. The City Council shall refer that application to the City Plan Commission. The City Plan Commission will report to the Council on such application with respect to the effect of such proposed use upon the character of the neighborhood, traffic conditions, public utility facilities, and upon other matters pertaining to the general welfare of the community.

3. The City Council shall not act upon the application for a special permit until after receipt of such report from the City Plan Commission, provided that, if no report has been received within 60 days, it shall be understood that the Commission's finding and opinion is that the proposed use would have no adverse or deleterious effect in the respects noted.

4. The City Council shall, prior to acting, hold a public hearing on the application.

5. The City Council shall thereafter, upon the facts and other information thus before it, determine therefrom whether the granting of the permit will or will not promote the health, safety, morals, or general welfare of the people of Webster Groves in accordance with and in the accomplishment of the comprehensive zoning

plan embodied in the ordinance of which this Section 13 is a part, and upon an affirmative finding grant and upon a negative finding deny the permit.

In considering the foregoing, it is important to point out that the "City Plan Commission" referred to in Section 13 is specifically provided for by Section 89.070 RSMo 1949, V.A.M.S., as the body which, if in existence, may take the place of the zoning commission, which latter body or its substitute the City Council had to appoint in order to avail itself of the powers conferred by Sections 89.010–89.140 heretofore referred to. We mention that fact to demonstrate that the "City Plan Commission" is not some body set up independently and arbitrarily by the City of Webster Groves but, on the contrary, is an essential part of the comprehensive zoning system permitted by the enabling acts.

Relators have cited several Missouri cases which generally support their present position, viz., City of St. Louis v. Russell, 116 Mo. 248, 22 S.W. 470, 20 L.R.A. 721; City of St. Louis v. Polar Wave Ice & Fuel Co., 317 Mo. 907, 296 S.W. 993, 54 A.L.R. 1082; Hays v. City of Poplar Bluff, 263 Mo. 516, 173 S.W. 676, L.R.A.1915D, 595; State ex rel. Triangle Fuel Co. v. Caulfield, supra; Fairmont Inv. Co. v. Woermann, 357 Mo. 625, 210 S.W.2d 26. None of them, however, except the Fairmont Inv. Co. case, had to do with the validity of sections of an ordinance which were parts of a comprehensive zoning plan enacted pursuant to the delegation of police power contained in the enabling statutes, Sections 89.010–89.140, RSMo 1949, V.A.M.S. We have no doubt that the same general rule as stated in Lux v. Milwaukee Mechanics' Ins. Co., supra, should apply, irrespective of whether the case involved a comprehensive zoning ordinance. We also are of the view, however, that the determination of what may constitute a sufficient standard within an ordinance, must be affected to some extent by the fact that a particular ordinance section is an integral part of a comprehensive zoning ordinance

(and here, concededly a proper part thereof) in which the total ordinance (of which Section 13 is a part) sets forth in general terms a uniform procedure for the Council to follow in exercising its discretion.

The apparent difficulty involved in readily suggesting a more definite and precise standard than is provided in Section 13 by the procedure there prescribed is persuasive to the view we are constrained to take that the general standards therein are sufficient. We think it would be impracticable to set forth a completely comprehensive standard insuring uniform discretionary action by the City Council. We think the procedure prescribed by Section 13, reasonably interpreted, is sufficient to provide against the exercise of arbitrary and uncontrolled discretion by the City Council. (We are not here concerned with the review of administrative action.) Section 13 prescribes a procedure for determining, and requires the City Council to determine, whether the location and use of a filling station in C commercial would or would not promote the "health, safety, morals or general welfare of the community" by determining specifically whether such location and use would or would not adversely affect "the character of the neighborhood, traffic conditions, public utility facilities and other matters pertaining to the general welfare"; it requires that such determination be made upon evidence and facts adduced before it (a quasi-judicial function) and requires the Council to thereafter exercise its discretion based upon such finding. We conclude, therefore, and so hold, that the legislative discretion so delegated to the Council is sufficiently circumscribed to require that discretion to be reasonably, not arbitrarily, exercised.

In reaching the conclusion above stated, we are of the view that our case of Fairmont Inv. Co. v. Woermann, supra, is not to the contrary. Because that case involved a comprehensive zoning ordinance and bears a similarity to instant case in some of its aspects, we have singled it out for comment. It was there held that Sub-

section 5 of Section 16 of a zoning ordinance of the City of St. Louis, which gave the Board of Adjustment power " 'to vary or modify the application of any of the regulations or provisions of this ordinance where there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of this ordinance so that the spirit of the ordinance shall be observed * * * and public safety and welfare secured and substantial justice done,' " did not thereby contain a "uniform rule, or test or set of standards which satisfy the demands of the law"; that is to say, to satisfy the uniform holding of the courts "that proper restrictions upon the exercise of a police power are that such power be reasonably exercised, that it be certain, that it have uniformity of application in accordance with some standard contained within the ordinance itself, placed there by the legislative body of the municipality." 210 S.W.2d 29, 31 [6, 7]. There the legislative power and discretion granted to the Board of Adjustment were not circumscribed so as to reasonably provide against the exercise of arbitrary discretion. In the instant case, as we have held, the contrary is true.

While relators, in their brief, assign five reasons for the invalidity and unconstitutionality of the pertinent sections of the ordinance, what we have said herein has effectively disposed of all of the assigned reasons. It follows that the judgment is reversed and the case remanded with directions to discharge the alternative writ of mandamus.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court en banc.

All concur, except EAGER, J., not sitting.