BOYLE G. CLARK, General Chairman of the Bar Committees of the State Bar, ET AL., Informants, v. EDWIN S. AUSTIN.

BOYLE G. CLARK, General Chairman of the Bar Committees of the State Bar, ET AL., Informants, v. P. H. COON.

BOYLE G. CLARK, General Chairman of the Bar Committees of the State Bar, ET AL., Informants, v. J. FRED HULL.—101 S. W. (2d) 977.

Court en Banc, February 8, 1937.

468

470

472

*Roy McKittrick,* Attorney General, *Franklin E. Reagan,* Assistant Attorney General, *Don Purteet* and *Victor C. Gladney* for Informants; *Frank E. Atwood* and *Paul M. Peterson* of counsel.

*E. C. Curfman* and *A. F. Harvey* for respondent.

*Ragland, Otto & Potter* and *H. H. Larimore* for P. H. Coon.

*Carl J. Henry* for Edwin S. Austin.

FRANK, J.—Original proceedings in this court to adjudge respondents in contempt of the authority of this court because of alleged illegal practice of law.

Boyle G. Clark, general chairman of the bar committees of the

State, and the members of the advisory committee to the general chairman, filed separate informations against each of the respondents charging therein the specific acts constituting the alleged illegal practice of law. Each respondent filed answer to the charge made against him, and informants filed in each case a motion for judgment on the pleadings, alleging therein that each answer admitted the acts complained of in the information, and that the facts stated in avoidance thereof were not sufficient in law to constitute any defense thereto.

The three cases will be disposed of in one opinion.

■ The practice of law is defined by Section 11692, Revised Statutes 1929, but this court has inherent power to define and regulate the practice of law independent of any statute on the subject. The recent case of In re Richards, 333 Mo. 907, 915, 63 S. W. (2d) 672, as well as many other cases therein cited, holds that the power to define and regulate the practice of law is, in its exercise, judicial and not legislative. In the Richards case we said:

"It is not always easy to determine what objects are naturally within the range or orbit of a particular department of government, but it will scarcely be denied that a primary object essentially within the orbit of the judicial department is that courts properly function in the administration of justice, for which purposes they were created, and in the light of judicial history they cannot long continue to do this without power to admit and disbar attorneys who from time immemorial have in a peculiar sense been regarded as their officers. Since the object sought is not naturally within the orbit of the legislative department, the power to accomplish it is in its exercise judicial and not legislative, although in the harmonious co-ordination of powers necessary to effectuate the aim and end of government it may be regulated by statutes to aid in the accomplishment of the object but not to frustrate or destroy it."

We agree with the holding that the power to define and regulate the practice of law is, in its exercise, judicial and not legislative, but we do not agree with the further holding that the exercise of such power may be regulated by statute. If it be correct to hold that such power is judicial, then it is not correct to hold that the exercise of such power may be reasonably regulated by the Legislature, in face of the constitutional injunction that the legislative department of government shall not encroach upon the powers and functions properly belonging to the judicial department. ■ At all times since the adoption of our Constitution, it has been the settled law of this State, that a law enacted by the Legislature concerning a subject upon which it has authority to legislate, whether reasonable or unreasonable, if constitutional, is binding on the courts and they must follow it. In Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 997, 30 S. W. (2d) 447, 462, this court said:

"The propriety, wisdom and expediency of legislation enacted in

pursuance of the police power is exclusively a matter for the Legislature. The single question which lies within the province of the judiciary for its determination is whether the Legislature, in the exercise of the police power, had exceeded the limits imposed by the Constitution, Federal or State.''

In the recent case of Vrooman v. St. Louis, 337 Mo. 933, 947, 88 S. W. (2d) 189, the rule is stated thus:

''The protection against unwise or oppressive legislation, within constitutional bounds, is by an appeal to the justice and patriotism of the representatives of the people. If this fail, the people in their sovereign capacity can correct the evil; but courts cannot assume their rights. The judiciary can only arrest the execution of a statute when it conflicts with the Constitution. It cannot run a race of opinions upon points of right, reason, and expediency with the law-making power. Any legislative act which does not encroach upon the powers apportioned to the other departments of the government, being prima facie valid, must be enforced, unless restrictions upon the legislative authority can be pointed out in the Constitution, and the case shown to come within them.''

In view of the well-settled law that any enactment of the Legislature which does not violate the Constitution is binding on the courts, a holding that the Legislature has authority to reasonably regulate the practice of law, would place it within the power of the Legislature to destroy the inherent power of the court in that behalf, by unwise or unreasonable legislation on that subject, because any law enacted on the subject, whether wise or unwise, reasonable or unreasonable, if it did not violate the Constitution, would be binding on the courts and they would be compelled to accept and follow it.

To say that a statute which unreasonably hampers the courts or unreasonably encroaches on judicial power is unconstitutional, amounts to a holding that a statute which reasonably hampers the courts, and reasonably encroaches on judicial power is not unconstitutional. A conclusive answer to such a holding is that any encroachment on judicial power, whether reasonable or unreasonable, violates the Constitution which provides, in express terms, there shall be no encroachment at all.

■ Article III of the Constitution of the State provides that, ''The powers of government shall be divided into three distinct departments—legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others.''

It is clear from this constitutional provision that the three departments of government must be kept separate, and each must operate in its own sphere.

476

Section I of Article VI of the Constitution vests the judicial power of the State in this and other courts named in that section.

The Constitution does not, by express grant, vest the power to define and regulate the practice of law in either department of government. In the absence of an express grant of this power to either department, it must be exercised by the department to which it naturally belongs, because "it is a fundamental principle of constitutional law that each department of government, whether Federal or State, has, without any express grant, the inherent right to accomplish all *objects naturally within the orbit of that department*, not expressly limited by the existence of a similar power elsewhere or the express limitations in the Constitution." [In re Richards, 333 Mo. 907, 914, 63 S. W. (2d) 672, 675.] Speaking to a like question in State ex inf. v. Washburn, 167 Mo. 680, 691, 67 S. W. 592, this court en banc said:

"All governmental powers are in their natures either legislative, executive or judicial. The Constitution does not undertake to define what acts fall within the one class or the other, but leaves every act to be classified according to its nature, recognizing that the essentials which distinguish those that belong to one department from those that belong to the two others, are discernible to the learned mind. But in that article of the Constitution all the powers of the State government are disposed of, and every one who lawfully exercises any State governmental function is able to trace the source of his authority to one of the three departments there named. The power, whatever its character, can be exercised only by or under authority of the separate magistracy to which by the Constitution it is assigned."

In the absence of an express grant of power to define and regulate the practice of law to either department of government, the question is, to which department does that power naturally belong?

The primary duty of courts is the administration of justice. Attorneys are officers of the court. They are, in effect, a part of the judicial system of the State. Their duties when honestly and ably performed, aid the courts in the administration of justice. Their educational and moral qualifications should be such as to insure the conscientious and efficient performance of such duties. The practice of law is so intimately connected with the exercise of judicial power in the administration of justice, that the right to define and regulate such practice logically and naturally belongs to the judicial department.

In view of the constitutional separation of the powers of government into three distinct departments—legislative, executive and judicial, and in view of the constitutional injunction that neither department shall encroach upon the powers and functions properly belonging to either of the others, any effort on the part of the Legislature to prescribe the qualifications of applicants for admission to the bar, or to define or regulate the practice of law would be an un-

constitutional attempt on the part of the legislative department of government to encroach upon the powers and functions properly belonging to the judicial department. In People ex rel. Illinois State Bar Association et al. v. People's Stock Yards State Bank, 344 Ill. 462, 470, the Supreme Court of Illinois expresses our views on the subject. We quote therefrom the following:

"Under the Constitution of this State the judicial power is vested solely in the courts. [Const. Art. 6, Sec. 1, and Art. 3; Missouri River Telegraph Co. v. First Nat. Bank, 74 Ill. 217; In re Day, 181 Ill. 73.] Included in this grant are all powers necessary for complete performance of the judicial functions. [State of Illinois v. Illinois Central Railroad Co., 246 Ill. 188.] Although the Constitution does not expressly confer upon this court power and jurisdiction with respect to the admission of attorneys to practice law, such power and jurisdiction are necessarily implied and are inherent in this court. [In re Day, supra.] As a part of such inherent power this court may not only determine the educational and moral qualifications of applicants for admission to the bar but may also discipline or disbar attorneys for misconduct. [People v. Chamberlain, 242 Ill. 260; People v. Czarnecki, 268 Ill. 278.] Attorneys are officers of this court and their conduct as such is subject to supervision by it. They are, in effect, a part of the judicial system of the State. [In re Day, supra; People v. Czarnecki, supra; Ex parte Secombe, 19 How. 9; Ex parte Wall, 107 U. S. 265.] The power to prescribe the qualifications which will entitle an applicant to be admitted to the bar is judicial, as is also the power to discipline or disbar attorneys for professional misconduct either in court proceedings or their relations with clients outside of court. [People v. Macauley, 230 Ill. 208; People v. Meyerovitz, 278 Id. 356.]"

We now come to a consideration of the cases on the merits. The charges against respondents involve alleged illegal practice of law before the Public Service Commission. The informations against respondents enumerate the causes and hearings in which respondents, for a valuable consideration, appeared before the commission representing persons interested in the granting or refusal of certificates of convenience and necessity and permits to operate freight carrying motor vehicles over certain designated routes; it is charged in the information and admitted in respondents' answers thereto, that they were not licensed to practice law in this or any other state; that they appeared in such hearings, prepared and filed pleadings and other documents therein, gave advice as to what facts should be established, and examined and cross-examined witnesses in the conduct of such hearings. Other facts are alleged in the information in detail, but we regard the ones we have stated sufficient for a determination of the cases.

It would be difficult to give an all-inclusive definition of the prac-

tice of law, and we will not attempt to do so. It will be sufficient for present purposes to say that one is engaged in the practice of law when he, for a valuable consideration, engages in the business of advising persons, firms, associations or corporations as to their rights under the law, or appears in a representative capacity as an advocate in proceedings pending or prospective, before any court, commissioner, referee, board, body, committee, or commission constituted by law or authorized to settle controversies, and there, in such representative capacity, performs any act or acts for the purpose of obtaining or defending the rights of their clients under the law. Otherwise stated, one who, in a representative capacity, engages in the business of advising clients as to their rights under the law, or while so engaged, performs any act or acts either in court or outside of court for that purpose, is engaged in the practice of law. [Rhode Island Bar Association et al. v. Automobile Service Association, 55 R. I. 122; People ex rel. Illinois Bar Association et al. v. Peoples Stock Yards State Bank, supra; Fitchette v. Taylor (Minn.), 254 N. W. 910, 94 A. L. R. 356; In re Duncan, 83 S. C. 186, 65 S. E. 210, 24 L. R. A. (N. S.) 750; Boykin v. Hopkins, 174 Ga. 511, 162 S. E. 796.]

It is apparent, without discussion, that the admitted acts of respondents constitute the unauthorized practice of law.

Respondent, Coon, alleges that he was a regular employee of the Missouri Pacific Railroad Company in the capacity of assistant general freight agent; that in the hearings before the Public Service Commission, he represented said railroad in the capacity of employee and freight agent, and not in the capacity of an attorney at law. The capacity in which he appeared in such hearings must be determined by the admitted acts he performed, and not by his alleged statement of the capacity in which he appeared. The law recognizes the right of natural persons to act for themselves in their own affairs, although the acts performed by them, if performed for others, would constitute the practice of law. A natural person may present his own case in court or elsewhere, although he is not a licensed lawyer. A corporation is not a natural person. It is an artificial entity created by law. Being an artificial entity it cannot appear or act in person. It must act in all its affairs through agents or representatives. In legal matters, it must act, if at all, through licensed attorneys. [Mullin-Johnson Company v. Pennsylvania Mutual Life Insurance Company, 9 Fed. Supp. 175; New Jersey Photo Engraving Company v. Carl Schonert & Sons, Inc., 95 N. J. Eq. 12, 122 Atl. 307; Black and White Operating Co. v. Grosbart, 107 N. J. L. 63, 151 Atl. 630; Cary & Co. v. Satterlee & Co., 166 Minn. 507, 208 N. W. 408; In re Richards, 333 Mo. 907, 63 S. W. (2d) 672.]

In the Mullin-Johnson Company case, supra, the court said:

"It is settled in California that there are certain professional occupations which a corporation is functionally incapable of engaging

in, such as the practice of the law. Plaintiff corporation is not, and could not be, a member of the bar of California, whose members, under our rules, may be admitted to practice in this court. Obviously plaintiff corporation could not plead and manage its case personally, as provided in 28 U. S. C. A., section 394, nor could it manage it through an agent of its appointment who is not an attorney of the court. [Nightingale v. Oregon Cent. Ry. Co. (C. C. Or. 1873), 18 Fed. Cas. 239, No. 10264.]

" 'Since a corporation cannot practice law, and can only act through the agency of natural persons, it follows that it can appear in court on its own behalf only through a licensed attorney. It cannot appear by an officer of the corporation who is not an attorney, and may not even file a complaint except by an attorney, whose authority to appear is presumed; in other words, a corporation cannot appear *in propria persona*. A judgment rendered in such a proceeding is void.' California Jurisprudence, 1932 Supplement, 'Practice of Law,' p. 34, citing Bennie v. Triangle Ranch Co., 73 Colo. 586, 216 Pac. 718.''

In the New Jersey Photo Engraving Company case, supra, a corporation had filed in the chancery court a petition praying for the extension of time to file its claim with a receiver. The petition was signed by the corporation, by an attorney in fact. The attorney in fact was not a licensed attorney at law. The court held that the corporation, being an artificial person could appear only by an attorney and dismissed the motion.

This ruling was followed in the Black & White Operating Co. case, supra. In that case, the corporation, through its president, sued out a writ of attachment and the court held that the corporation could not act in the attachment proceedings other than through a licensed attorney.

In the Cary & Company case, supra, the Minnesota court held that one who was not a licensed attorney could not appear in court representing the defendant, corporation, even though he held all of the stock of the corporation, for the reason that the corporation was a separate entity, an artificial person and could not personally appear in court.

Respondent, Coon, not being a licensed lawyer, his employment by the Missouri Pacific Railroad Company in the capacity of freight agent, did not authorize him to represent the railroad in matters involving the practice of law.

Respondent, Hull, pleads that the provisions of Section 11695, Revised Statutes 1929, empowering this court to license persons to practice law in the courts of record of this State, thereby excludes its power, to license, or require persons to be licensed to practice law except in courts of record.

The statute invoked is not binding upon this court. Whether or not

one is engaged in the practice of law depends upon the character of acts he performs and not the place where he performs them. It follows, therefore, that if this court has inherent power to define and regulate the practice of law, acts coming within the court's definition would constitute the practice of law regardless of the place of their performance. The power to define and regulate the practice of law being inherent in the court, no statute is necessary to authorize the exercise of such power. In the recent case of In re Sparrow, 338 Mo. 203, 90 S. W. (2d) 401, this court en banc dealt with the inherent power of the court to disbar attorneys. HAYS, J., speaking for the court quoted approvingly from Weeks on Attorneys at Law, section 80, pages 140, 141, the following:

"The power to strike from the rolls is inherent in the court itself. No statute or rule is necessary to authorize the punishment in proper cases. . . . It is necessary for the protection of the court, the proper administration of justice, the dignity and purity of the profession, and for the public good and the protection of clients."

The Sparrow case holds that the power to disbar attorneys is inherent in the court itself, and may be exercised by the court in the absence of any statute on the subject. The Richards case, supra, holds that such power is, in its exercise, judicial and not legislative. Our attention has also been called to Ex parte Creasy, 243 Mo. 679, 708, 148 S. W. 914, 923, and State ex rel. Selleck v. Reynolds, 252 Mo. 369, 379, 158 S. W. 671, 673, holding that the power to punish for contempt is inherent in the court. If these powers are inherent in the courts, they are necessarily judicial powers and belong to the judicial department. The Selleck case, the Creasy case and the Richards case also hold that the inherent power of the court may be reasonably regulated by statute. To this latter holding we do not agree. It runs counter to the positive mandate of the Constitution which provides, in express terms, that no person or collection of persons, charged with the exercise of powers properly belonging to one department of government, shall exercise any power properly belonging to either of the others. As I read these cases none of them advance any constitutional authority in support of the holding that the exercise of the inherent judicial power of a court may be regulated by statute. In the case of In re Hagan, 295 Mo. 435, 442, 245 S. W. 336, this court en banc said:

"In the matter of contempt we have never gone further than to rule that as a matter of comity between the separate departments of the State Government, we would recognize reasonable restrictions imposed by the Legislature. We never have ruled that we had to recognize such legislative restrictions."

Comity between the separate departments of government would be best prompted by strict adherence to the Constitution. Disregard of constitutional restrictions destroys the checks and balances of one

department against the other, and tends to promote discord rather than comity between the departments.

The practice of law is not confined to appearance in court in a representative capacity as an advocate. A person may never appear in court and yet be engaged in the practice of law. One engaged in the practice of law in this State without a license authorizing him so to do, is in contempt of this court regardless of whether he appears as an attorney in this court or in any other court of record. [Rhode Island Bar Association et al. v. Automobile Service Association, supra; People ex rel. Chicago Bar Association, Relator, v. The Motorist Association of Illinois, 354 Ill. 595, 188 N. E. 827; People ex rel. Illinois State Bar Association et al. v. People's Stock Yards State Bank, supra; In Re Morse, 98 Vt. 85, 126 Atl. 550.] The theory of above holding is that the practice of law outside of court proceedings, is a contempt of this court and punishable as such ''because the wrong-doer has affronted this court by usurping a privilege solely within the power of this court to grant.'' In the case against People's Stock Yards State Bank, supra, the Supreme Court of Illinois said:

''It is also argued that for acts outside of court which amount to unauthorized practices of law the offender cannot be punished for contempt of this or any other court. What we have said above should be sufficient to dispose of this contention. To deny the power of the court to deal with such offenders would be tantamount to a destruction of the power itself. Perhaps the major portion of the actual practice of law under modern conditions consists of the work of attorneys outside of any court and has nothing to do with court proceedings. [People v. Alfani, 227 N. Y. 334, 125 N. E. 671.] It is just as essential to the administration of justice and the proper protection of society that unlicensed individuals should not be permitted to prey upon the public in that sphere of the practice of law as it is with respect to proceedings in the courts. It is no less a usurpation of the function and privilege of an attorney and an affront to the court having sole power to license attorneys, for one not licensed as such to perform the services of an attorney outside of court proceedings.''

In a separate opinion by Ellison, C. J., an attempt is made to inject into this case the question of the power of the General Assembly to enact procedural laws. That question is not an issue in this case. Obviously, therefore, anything we might say on that subject would be mere *obiter*. For that reason we decline to discuss the question at this time.

All of the respondents plead that they did not knowingly and unlawfully intrude themselves into the office of attorney of this or any other court. They further plead that from the date of the creation of the Public Service Commission, down to the present time, laymen have appeared before such commission in a representative capacity

without objection from the commission, or anyone else; that what they did before the Public Service Commission was done in the honest belief that they had a lawful right so to do; that they did not intentionally violate any law or rule of this court, and they stand ready and willing to abide by and comply with any orders or judgments of this court in the premises. In addition, respondents, with commendable frankness have admitted the acts performed by them in matters, pending or prospective, before the Public Service Commission, and have made no attempt to keep the actual facts from this court. Their conduct in this behalf merits consideration, but it does not furnish a lawful excuse for engaging in the practice of law without a license authorizing them so to do.

We find that respondents were each engaged in the unauthorized practice of law, and adjudge them in contempt of this court for so doing. It is further ordered that they each appear before this court on the first day of March, 1937, at nine o'clock A. M., to hear and obey such further orders and judgments as the court may render at that time.

*Gantt, J.,* concurs in separate opinion; *Ellison, C. J.,* concurs in result in separate opinion; *Hays, Tipton, Leedy* and *Collet, JJ.,* concur in result and in separate concurring opinion of *Ellison, C. J.*

GANTT, J. (concurring).—I agree that the Supreme Court has the exclusive power to define and regulate the practice of law, and, therefore, concur in the principal opinion. ▆ I do not subscribe to the doctrine that the Legislature may, under the guise of aiding the court, enact statutes encroaching upon the judicial power. Furthermore, the situation affords no place for comity. However, the Legislature may enact statutes condemning the unlicensed practice of law. It may do so under the police power. The enactment of such statutes do not, in any degree, encroach upon the exclusive constitutional power of this court to define and regulate the practice of law. In other words, I think that Sections 11693 and 11694, Revised Statutes 1929, are constitutional statutes. They are directed against unauthorized practice of law and do not encroach upon the judicial power.

The question of the authority of the Legislature to enact such statutes is not presented by the record in this case and is not ruled by the principal opinion. Even so, it occurred to me that I should state my convictions on the question.

ELLISON, C. J. (concurring).—I concur in the ultimate conclusion of the principal opinion, but am unable to agree to the reasoning by which it is reached; and since I believe a decision on the theory of the opinion would lead us into fundamental error widely affecting our re-

lations with a co-ordinate branch of the State government, the General Assembly, I file this separate opinion.

The informations charge the respondents with contempt of this court, in that they severally practiced law before the Public Service Commission of this State without being licensed as attorneys, in violation of Sections 11692 and 11693, Revised Statutes 1929 (Mo. Stat. Ann., pp. 621, 622). Section 11692 defines the practice of law as including, among other things, the performance of any act in a representative capacity in connection with proceedings pending before any commission constituted by law. Section 11693 forbids any person to engage in "the practice of law" as defined in Section 11692 unless he be duly licensed as an attorney at the time, and makes a violation of the section a misdemeanor punishable by fine. On the record it stands admitted the respondents did violate the statutes as charged. But the principal opinion by necessary effect holds the statutes unconstitutional and adjudges the respondents guilty of contempt in virtue of our inherent power to define and regulate the practice of law. I think the statutes are valid and that the respondents' conviction should be based on their misconduct in violating the same.

The first step in the reasoning of the principal opinion follows In re Richards, 333 Mo. 907, 63 S. W. (2d) 672, decided by this court en banc in 1933, wherein it was ruled this court has inherent power to define and regulate the practice of law; and has original jurisdiction to disbar attorneys for offenses committed in the practice of law though not connected with proceedings pending in this court. This being so, we have like power to discipline persons who are not lawyers for conduct of similar nature. So far I agree.

But the Richards case and many others cited therein, further concede the legislative department may enact laws on that same subject if and insofar as such statutes do not destroy the inherent power of the courts. The principal opinion overrules the Richards case on this point; declares our power to define and regulate the practice of law is *exclusive*; and holds the General Assembly cannot by legislation *enter* any field reached by us in the exercise of our inherent powers, and cannot pass any statute on a subject within such fields even though good and wholesome. To this I do not agree; and I think the holding is unnecessary to the decision of the cases presented.

In arriving at the conclusion stated, the principal opinion lays down as a premise the rule announced in many decisions that courts have nothing to do with the reasonableness or unreasonableness of a statute, their sole province being to determine whether it is constitutional. Thence it reasons that if the Legislature can enter any field wherein this court has judicial power, by passing regulatory statutes, it can pass *unreasonable* statutes destroying that power without our being able to prevent it; and since the legislative destruction of

judicial power conferred on the courts by Article III and Section 1, Article VI of the Constitution would run counter to those two constitutional provisions, therefore the conclusion is drawn that the Legislature must stay out of such fields altogether. The theory of the principal opinion is that the *power to regulate necessarily carries with it the power to destroy*; and that the division of governmental powers between the legislative, executive and judicial departments enjoined by Article III of the Constitution, *completely excludes* each department from any field rightly entered by another.

If that reasoning is correct its effect will be far reaching. Less than a year ago this court en banc in In re Sparrow, 338 Mo. 203, 90 S. W. (2d) 401, 403, unanimously held it to be "well established that courts have inherent power to prescribe such rules of practice and rules to regulate their proceedings and facilitate·the administration of justice as they may deem necessary." And if, by reason of the fact that we have inherent power to prescribe rules of practice and procedure, the General Assembly is excluded from the field of procedural law then it necessarily follows that our whole code of civil procedure of nearly 1000 sections, our code of criminal procedure with about 500 sections, and the statutes providing a procedure for the liquidation of insolvent banks and the reorganization of building and loan associations are unconstitutional and must fall; as well as our statutes concerning contempts, attorneys at law, creating a bar examining board, and perhaps the Public Service Commission Act, the Workmen's Compensation Act, the Juvenile Court Acts, and many other similar statutes; because all such legislation enters fields wherein the constitutional courts of the State have either express or implied powers.

But the reasoning of the principal opinion was repudiated by this court nearly twenty-five years ago. · It follows (without citing) Chicago, B. & Q. Ry. Co. v. Gildersleeve, 219 Mo. 170, 181, 118 S. W. 86, 89, 16 Ann. Cas. 749, a banc decision rendered in 1909, wherein four of the seven judges of this court held the circuit courts and other constitutional courts of this State have *unlimited* power to punish for contempt, and that the Legislature cannot pass laws on that subject because, if they could, they might pass unreasonable laws destroying the power. But three of the judges dissented in an able opinion by LAMM, J., which demonstrated that "the power to regulate does not in all cases . . . mean the power to destroy." The majority opinion stood as the law of this State for less than four years. In Ex parte Creasy, 243 Mo. 679, 708, 148 S. W. 914, 923, 41 L. R. A. (N. S.) 478, decided in 1912, it was overruled, and the minority opinion of LAMM, J., was held to be "unanswerable" and was followed by the court en banc without dissent. The minority opinion in the Gildersleeve case was cited, discussed, and unanimously followed a second time by the court en banc in State ex rel. Selleck v. Reynolds, 252 Mo. 369, 379, 158 S. W. 671, 673; and all these decisions are re-

ferred to and followed in the Richards case, supra, 333 Mo. 1. c. 915, 63 S. W. (2d) 1. c. 675 (3), where this court en banc, again speaking unanimously, said concerning its inherent power to disbar attorneys, "In the harmonious co-ordination of powers necessary to effectuate the aim and end of government it may be regulated by statutes to aid in the accomplishment of the object but not to frustrate or destroy it." *The principal opinion expressly overrules all of these decisions of the court en banc, and goes back to the doctrine of the Gildersleeve case.

Article III of the Constitution dividing the powers of government into three distinct departments—the legislative, executive and judicial—and confiding each to a separate magistracy, provides that "no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this Constitution expressly directed or permitted." This language seems restrictive but in practical application has always been liberally construed. The word "properly" is taken as meaning solely or exclusively.

Thus it is said in 6 Ruling Case Law, section 146, page 146, "While the true meaning of the principle seems to be that the *whole* power of one department should not be exercised by the same hands which possess the *whole* power of either of the other departments, and that the doctrine should be applied only to the powers which because of their nature are assigned by the Constitution itself to one of the departments *exclusively*, it does not necessarily follow that an entire and complete separation either is desirable or was ever intended." (Italics mine.) This text closely follows what is said in 1 Story on the Constitution (5 Ed.), section 525, page 393, and is supported by the following further authorities: People v. Simon, 176 Ill. 165, 171, 52 N. E. 910, 912, 68 Am. St. Rep. 175, 179, 44 L. R. A. 801, 806; People ex rel. Rusch v. White, 334 Ill. 465, 479, 166 N. E. 100, 105, 64 A. L. R. 1006, 1014; Saratoga Springs v. Saratoga G., E. L. & P. Co., 191 N. Y. 123, 132, 83 N. E. 693, 695, 14 Ann. Cas. 606, 607, 18 L. R. A. (N. S.) 713, 718; State ex rel. Patterson v. Bates, 96 Minn. 110, 115, 104 N. W. 709, 711, 113 Am. St. Rep. 612, 617; Henrico

* The majority opinion in the Gildersleeve case was based on State ex inf. Crow v. Shepherd, 177 Mo. 205, 76 S. W. 79, 99 Am. St. Rep. 624. In re Elliston, 256 Mo. 378, 383, 165 S. W. 987, 990, condemns the Shepherd case and approves the Creasy case and the minority opinion in the Gildersleeve case. In re Hagan, 295 Mo. 435, 442, 245 S. W. 336, 337, citing the Gildersleeve and Creasy cases, says that in contempt cases we have never recognized statutory restrictions as binding except through comity. DeMay v. Liberty Foundry Co., 327 Mo. 495, 37 S. W. (2d) 640, reviews all the foregoing cases in upholding the constitutionality of the Workmen's Compensation Act. Ex parte Lemond, 295 Mo. 586, 595, 245 S. W. 1057, 1059, in an *obiter* ruling "adheres" to the doctrine of the Shepherd case without noticing the Gildersleeve, Creasy, Elliston and Selleck cases. None of these decisions are referred to in the Richards case.

County v. City of Richmond, 106 Va. 282, 293, 55 S. E. 683, 687, 117 Am. St. Rep. 1001, 1007.

And 12 Corpus Juris, section 235, page 803, says: "But while such (the division of governmental powers) is the theory of American Constitutional government, it is no longer an accepted canon among political scientists. It has never been entirely true in practice. The courts recognize that the separation of the powers is far from complete, and that the line of demarcation between them is often indefinite. Each of the three departments normally exercises powers which are not strictly within its province."

Such is the accepted doctrine in this State. In State ex rel. Manion v. Dawson, 284 Mo. 490, 506, 225 S. W. 97, 100, this court en banc said, "The line of demarcation between legislative, executive and judicial functions is not easy to draw. These functions shade into one another as imperceptibly as the mountain merges into the valley, or the river into the sea." And in In re Birmingham Drainage Dist., 274 Mo. 140, 150, 202 S. W. 404, 406, the court declared that notwithstanding the provisions of Article III of the Constitution, "we have held (citing case) that duties which are not judicial may be performed by judicial officers unless they are clearly such as are confided by the Constitution itself to the executive or legislative department. This literal and altogether reasonable construction is founded in the necessities inherent in all Governments."

Likewise in Rhodes v. Bell, 230 Mo. 138, 150, 130 S. W. 465, 468, Judge JAMES B. GANTT speaking for the court said: "But notwithstanding the purpose of the people in the framing and adoption of our constitutional provision to keep the several departments of our State government separate and independent in the spheres allotted to each, a careful study of the whole Constitution will, we think, demonstrate that it was not the purpose to make a total separation of these three powers. . . . The general principle was happily expressed in the Constitution of New Hampshire, wherein it was declared: 'In the government of this State, the three essential powers thereof, to-wit, the legislative, executive and judicial, ought to be kept as separate from, and independent of, each other as the nature of a free government will admit, or as is consistent with that chain of connection that binds the whole fabric of the Constitution in one indissoluble bond of union and amity.' "

Section 1, Article VI of the Missouri Constitution (as extended by the Amendment of 1884) vests "the judicial power of the State, as to matters of law and equity, except as in this Constitution otherwise provided," in the Supreme Court, the Courts of Appeals, the circuit courts and other named courts. It has been held the power thus conferred is the power "exercised in the ordinary forms of a court of justice, in a suit between parties, with process." [State ex rel. School District v. Andrae, 216 Mo. 617, 629, 116 S. W. 561,

563.] The power is plenary and extends to all justiciable matters. [Kansas v. Colorado, 206 U. S. 46, 83, 51 L. Ed. 956, 27 Sup. Ct. 655, 661.] On the other hand, the legislative power vested in the General Assembly by Sections 1 and 57 of Article IV of the Constitution is the power to make, alter and repeal laws *on any subject* not forbidden by the State and Federal Constitutions, subordinate only to the right of initiative and referendum reserved to the people. [Gordon v. Becker, 329 Mo. 1053, 49 S. W. (2d) 146.]

But both departments have certain additional powers variously called inherent, implied, essential, resulting or incidental. These in general include the right to accomplish all objects naturally within their respective orbits. In re Richards, 333 Mo. 907, 1. c. 914, 63 S. W. (2d) 1. c. 675. Strictly speaking, the *inherent* power of courts (and of the legislative department, as well) is that which is *necessary* to their existence and due functioning in the exercise of powers granted. It is essentially a protective power. [15 C. J., sec. 30, p. 732; Words and Phrases, First, Second and Fourth Series, ''Inherent Power;'' In re Bruen, 102 Wash. 472, 476, 172 Pac. 1152; In re Woolley, 74 Ky. 95, 111; Fuller v. State, 100 Miss. 811, 817, 57 So. 806, 807, 31 Ann. Cas. 98, 100, note, 39 L. R. A. (N. S.) 242, 247.] But they undoubtedly possess further incidental or implied powers which, while not indispensably necessary, are directly appropriate, convenient and suitable to the execution of their granted powers. [7 R. C. L., sec. 62, p. 1033; 15 C. J., sec. 108, p. 810.] Neither the granted or inherent powers of the General Assembly can be taken away by the courts, nor can the like powers of our constitutional courts be usurped or destroyed by the General Assembly. But it does not follow that both departments never can exercise powers in the same field.

There are decisions holding courts—at least those of record of superior jurisdiction—have inherent power; to decide as to the suitability of their quarters and equipment, 15 C. J., sec. 268, p. 899; to provide court officers and attendants reasonably necessary to the conduct of their business, 15 C. J., sec. 205, p. 871; to incur and order paid all expenses necessary for the holding of court and the discharges of the duties thereof, 15 C. J., sec. 272, p. 900; to establish rules of practice, 15 C. J., sec. 276, p. 901; to enforce their process, judgments and decrees, 15 C. J., sec. 108, p. 813; 34 C. J., sec. 1139, p. 737, sec. 1140, p. 738; to enforce discipline and punish for contempt, 15 C. J., sec. 108, p. 813; 13 C. J., sec. 62, p. 47 et seq.; and to control the practice of law and the admission and disbarment of lawyers, 6 C. J., sec. 16, p. 571; sec. 37, p. 580. The theory of the strict division of powers and that the power to regulate necessarily includes the power to destroy, announced in the principal opinion, would deny to the General Assembly the right to pass laws on any of these matters. But an examination of the foregoing citations will

show the doctrine is almost universal that the legislative department may enact reasonable statutes touching all of them.

It would unduly extend this opinion to refer to the cases covering all these points. But the question of the right of the General Assembly to enact statutes regulating court practice and procedure is important and there is much authority thereon. We shall discuss it briefly because of the analogies it furnishes. There are plain implications in Section 15, Article VI, Section 3 of the Amendment of 1890 to Article VI, and clauses 17 and 32 of Section 53, Article IV of our State Constitution that the Legislature may enter that field, and that the power is not exclusively judicial. Never since the enactment of the practice acts of 1804 and 1807 in the District and Territory of Louisiana has that legislative right been denied by any court in this State. It has been the law of the United States from the beginning. [Judiciary Act of 1789, sec. 17, 1 Stat. at Large, p. 83; Wayman v. Southard, 23 U. S. 1, 41, 6 L. Ed. 253; Bank of United States v. Halstead, 23 U. S. 51, 61, 6 L. Ed. 264.] For over 600 years Parliament has passed procedural laws in England, and has been decisively dominant since the Revolution of 1688 against James II. [12 American Bar Assn. Journal, p. 599; 34 Harvard Law Review, p. 424.] It does so now through a Rules Committee composed of judges and lawyers appointed by it, the rules so made being laid before Parliament. [Consolidation Act of 1925, secs. 99 and 100, 2 Law Reports, 1925, pp. 1197, 1249.] There is no state in this Union in which the right of the legislative department to enact procedural laws is denied, except where it has been restricted or transferred by a special constitutional provision, or has been voluntarily surrendered by statute.* The two United States Supreme Court decisions last cited above and several state cases hold the power is not so exclusively legislative that it cannot be delegated to the courts. [Ernst v. Lamb (1923), 73 Colo. 132, 213 Pac. 994; State ex rel. Foster-Wyman Lbr. Co. v. Superior Court (1928), 148 Wash. 1, 267 Pac. 770; Rules of Court Case (1931), 204 Wis. 501, 236 N. W. 717; DeCamp v. Cent. Ariz. L. & P. Co. (Ariz., 1936), 57 Pac. (2d) 311, 312; State v. Roy (New Mexico, 1936), 60 Pac. (2d) 646, 658.]

Getting back to the question of the right of the General Assembly to enact legislation regulating the practice of law and the admission and disbarment of attorneys. Statutes of this sort, also, have been passed from the earliest times in our history. The Legislature has never claimed the right itself to admit and disbar lawyers, but has conceded it to the courts subject to statutory regulation. [The first act was in 1804, 1 Mo. Ter. Laws, p. 49, and was followed by 1 R. S. 1825, p. 158; an amendment in 1830, 2 Ter. Laws, p. 206; and R. S. 1835, p. 89.] These statutes required attorneys to be licensed by the Supreme Court. The law was amended by Laws 1840-1, page 16,

---

*See addenda following this opinion.

which permitted the circuit courts, also, to grant such licenses. [Thence followed R. S. 1845, p. 158; R. S. 1855, p. 277; R. S. 1865, p. 558; 1 Wag. Stat. 1872, p. 198.] So stood the law when our present Constitution of 1875 was adopted. In the subsequent revisions of our statutes down to 1929, with which every lawyer is familiar, the same field has been entered by the Legislature. The power to admit and license attorneys was again vested exclusively in the Supreme Court and a state board of bar examiners was created by Laws 1905, page 48. The present Sections 11692, 11693 and 11694 were first enacted by Laws 1915, page 99.

In the first three cases decided by this court, orders suspending attorneys from the practice of law were reversed and remanded because the trial court failed to follow the statute: Strother v. State, 1 Mo. 605; State v. Watkins, 3 Mo. 481; State v. Foreman, 3 Mo. 602. In the Foreman case M'GIRK, C. J., dissented saying, "My opinion is that causes of dismissal exist independent of the statute, and may be inquired into beyond its provisions." Thence followed State ex rel. Jones v. Laughlin, 73 Mo. 443, 446; State ex rel. Walker v. Mullins, 129 Mo. 231, 237, 31 S. W. 744, 745; State ex rel. Walker v. Harber, 129 Mo. 271, 293, 31 S. W. 889, 892; and other decisions cited in the Richards case, supra, 333 Mo. l. c. 913, 63 S. W. (2d) l. c. 674, all holding that courts of general and common-law jurisdiction have inherent power to suspend or disbar attorneys for misconduct. But running along with these cases all the time have been the statutory provisions aforesaid, including Sections 11692 and 11693 involved in this case. Are they unconstitutional because the court has inherent power to regulate the practice of law and to admit and disbar attorneys? In other words, is the court's power exclusive?

The great weight of authority holds that the enactment of such statutes is a valid exercise of the police power. [6 C. J., sec. 16, p. 572, sec. 37, p. 581.] The General Assembly may regulate the practice of law just as it does doctors, dentists, and some twenty-four other professions, vocations and businesses in this State, so long as it does not frustrate the exercise of judicial power. In Ex parte Garland (1866), 71 U. S. 333, 379, 18 L. Ed. 366, the Supreme Court of the United States said: "The Legislature may undoubtedly prescribe qualifications for the office (of attorney), to which he must conform, as it may, where it has exclusive jurisdiction, prescribe qualifications for the pursuit of any of the ordinary avocations of life."

Re Day (1899), 181 Ill. 73, 95, 54 N. E. 646, 652, 50 L. R. A. 519, 527, is one of the leading decisions on this question. In that case the Supreme Court of Illinois went exhaustively into legal history and reached the conclusion that it had inherent power to regulate the practice of law, and to admit and disbar attorneys; and that any statute frustrating that power is unconstitutional. But the court further said: "The Legislature may enact police legislation for the protection

of the public against things hurtful or threatening to their safety and welfare. So long as they do not infringe upon the powers properly belonging to the courts, they may prescribe reasonable conditions which will exclude from the practice those persons through whom injurious consequences are likely to result to the inhabitants of the State.''

In Brydonjack v. State Bar (1929), 208 Cal. 439, 443, 281 Pac. 1018, 1020, 66 A. L. R. 1507, 1509-10, where an attorney, theretofore a nonresident, applied to the Supreme Court of California for admission to the bar, after being rejected by the committee of bar examiners appointed under the State Bar Act, Statute 1927, Chapter 34, page 38, the court said:

''Our courts are set up by the Constitution without any special limitations; hence the courts have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our State government. (Citing cases.) But this does not mean that the three departments of our government are not in many respects mutually dependent. Of necessity the judicial department as well as the executive must in most matters yield to the power of statutory enactments. (Citing cases.) The power of the Legislature to regulate criminal and civil proceedings and appeals is undisputed.

''Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, and this opinion need not be burdened with citations on this point. Admissions to practice have also been held to be the exercise of one of the inherent powers of the courts. (Citing cases.) But the power of the Legislature to impose reasonable restrictions upon the practice of the law has been recognized in this State almost from the inception of statehood.'' Here the opinion cites and quotes from two California cases, taking the following from Ex parte Yale, 24 Cal. 241, 244, 85 Am. Dec. 62, 64: ''The manner, terms, and conditions of their admission to practice, and of their continuing in practice, as well as their powers, duties and privileges, are proper subjects of legislative control to the same extent and subject to the same limitations as in the case of any other profession or business that is created or regulated by statute.''

Summarizing its conclusion, the court says: ''The sum total of this matter is that the Legislature may put reasonable restrictions upon constitutional functions of the courts provided they do not defeat or materially impair the exercise of those functions. This power has been described as follows: '. . . The mere procedure by which jurisdiction is to be exercised may be prescribed by the Legislature, unless, indeed, such regulations should be found to substantially impair the constitutional powers of the Courts or practically defeat their exercise.' (Citing cases.) And this power, to this extent, we must concede to the Legislature in the regulation of admissions to the bar.''

General Acts of Alabama, 1931, page 606, section 2 defines the practice of law somewhat as does Section 11692, Revised Statutes 1929 (Mo. Stat. Ann., p. 621). In Berk v. State ex rel. Thompson (1932), 225 Ala. 324, 331, 142 So. 832, 837, an action in the nature of *quo warranto* had been brought against the respondent Berk in the circuit court to oust him from the office of attorney, on the ground that he was engaged in practicing law by conducting a commercial collection agency as a vocation. He challenged the constitutionality of the act. On appeal the Alabama Supreme Court upheld it, saying: "It is well established that the act in question is a valid enactment under the police power, and offends neither State nor Federal Constitutions; is not usurpation of judicial power; does not deprive of liberty or property without due process; neither denies to citizens equal civil rights, nor grants special privileges and immunities; does not violate, impair, or deny rights retained by the people, and does not violate the Fourteenth Amendment to the Federal Constitution."

Another leading case is In re Cannon (1932), 206 Wis. 374, 397, 140 N. W. 441, 449. The petitioner, R. J. Cannon, in 1929 was ordered suspended from the office of attorney for a period of two years by the Wisconsin Supreme Court, and further ordered to pay the costs of the disbarment proceeding against him. In 1931 the Wisconsin Legislature passed a bill restoring to Cannon his license to practice law and remitting the costs adjudged against him. Later that year he filed application in the Wisconsin Supreme Court for reinstatement as a member of the bar. The court held the foregoing statute unconstitutional for several reasons, one being that it encroached on judicial power. In discussing the question the court said:

"We think the separation of sovereign power by which the Constitution assigns the legislative power to the Legislature and the judicial power to the courts, with the purpose of making each department supreme and independent in its respective field, accords to the Legislature the power of exacting of those who shall be admitted to the practice of the law such qualifications as the Legislature shall deem sufficient to protect the public from the evils and mischiefs resulting from incompetent and characterless attorneys, which qualifications so prescribed must be respected by the courts. The courts cannot and should not license any as attorneys at law who do not possess the qualifications deemed by the Legislature necessary for the protection of the public interest. . . .

"While the Legislature may legislate with respect to the qualifications of attorneys, its power in that respect does not rest upon any power possessed by it to deal exclusively with the subject of the qualifications of attorneys, but is incidental merely to its general and unquestioned power to protect the public interest. When it does legislate fixing a standard of qualifications required of attorneys at law in order that public interests may be protected, such qualifica-

tions constitute only a minimum standard and limit the class from which the court must make its selection. Such legislative qualifications do not constitute the ultimate qualifications beyond which the court cannot go in fixing additional qualifications deemed necessary by the courts for the proper administration of judicial functions. There is no legislative power to compel courts to admit to their bars persons deemed by them unfit to exercise the prerogatives of an attorney at law. The power of the court in this respect is limited only to the class which the Legislature has determined is necessary to conserve the public welfare.''

Still another case often cited is Re Opinion of Justices, 279 Mass. 607, 611, 180 N. E. 725, 727, 81 A. L. R. 1059, 1062. The Massachusetts Senate had pending before it a bill to regulate the correction of answers to bar examination questions, which, among other things, prohibited the marking of examination papers of applicants for admission to the bar by any person not a member of the board of bar examiners. It requested the opinion of the Justices of the Supreme Judicial Court as to the constitutionality of the bill. The Justices gave an opinion that the bill was unconstitutional, in the course of which they said:

''Statutes respecting admissions to the bar, which afford appropriate instrumentalities for the ascertainment of qualifications of applicants, are no encroachment on the judicial department. They are convenient, if not essential, to enable the judicial department properly to perform this duty. The establishment, in 1897, of a state board of bar examiners, in place of the county boards previously existing, is an example. Statutes of that nature are valid provided they do not infringe on the right of the judicial department to determine who shall exercise the privilege of practising in the courts and under what circumstances and with what qualifications persons shall be admitted to that end. When and so far as statutes specify qualifications and accomplishments, they will be regarded as fixing the minimum and not as setting bounds beyond which the judicial department cannot go. Such specifications will be regarded as limitations, not upon the judicial department but upon individuals seeking admission to the bar. There is no power in the General Court (the Massachusetts General Assembly) to compel the judicial department to admit as attorneys those deemed by it to be unfit to exercise the prerogatives and to perform the duties of an attorney at law. . . .

''The pending bill is different in its fundamental conception from many statutes indubitably valid, wherein practice and procedure both civil and criminal, rules of evidence, and substantive provisions of law have been altered. Statutes of that nature fall within the classification of wholesome and reasonable laws within the grant of power to the General Court to enact under the Constitution, and do not impinge upon the powers allotted to the judicial department. They

are distinguishable in essential features from the pending bill, which directly affects the capacity of the judicial department to function.''

In Rhode Island Bar Assn. v. Automobile Service Assn. (1935), 55 R. I. 122, 179 Atl. 139, 141, 100 A. L. R. 226, the respondents were charged with contempt of court for the illegal practice of law. A Rhode Island statute made it a criminal offense for persons to do certain acts without being licensed as lawyers. The respondents contended the acts they admittedly had done did not come within the terms of the statute. The Rhode Island Supreme Court ruled it had inherent power to adjudge acts outside the statute constituted illegal practice of law, and held the respondents guilty of contempt. In so deciding the court said: ''It is not necessary, in order to sustain the power of the court to hold that the Legislature cannot also act to prevent the evils to the public that inevitably arise from unauthorized practice of the law. In the exercise of the police power it undoubtedly can legislate in this matter.''

Ex parte Steckler (1934), 179 La. 410, 420-21, 154 So. 41, 44-5, was a case wherein two law school graduates applied to the Louisiana Supreme Court for a license to practice law without passing bar examinations as required by a statute passed in 1924, and Rule 15 of the Louisiana Supreme Court. Their applications were based on the fact that by legislative act in 1855 (which was carried into the Constitution of Louisiana by amendment in 1884) the right was vested in Tulane University, to confer the degree of Bachelor of Law automatically authorizing the recipient to practice law in the State. The applicants contended this made the right contractual, and that the 1924 act and rule of court requiring them to pass examinations were unconstitutional. The Louisiana Supreme Court held against this contention on the ground that the 1884 amendment incorporating the Act of 1855 into the Constitution simply took the act as it stood; that the act was a transitory exercise of police power which could not be permanently bartered away; and that the Legislature could not oust the judicial power of the Supreme Court to require further proof of qualifications to practice law than a mere diploma from a law school. On these points the court said:

''We are convinced that the Legislature did not, by the provisions of the ninth section of the act of 1855, or by proposing the constitutional amendment which was adopted in accordance with the act of 1884, surrender any of the authority of the Legislature to prescribe the conditions on which a person might be licensed to practice law—which is subject, of course, to such further conditions as may be imposed by this court. The power of the Legislature to prescribe minimum requirements for admission to the bar is merely a part of the police power; and a fundamental rule in our form of state government is that the Legislature cannot surrender irrevocably any of the state's police power. . . .

"The Legislature may, in the exercise of its police power, and in the performance of the duty to protect the public against imposition or incompetence on the part of persons professing to be qualified to practice the so-called learned professions, fix minimum qualifications or standards for admission to the bar. But the courts of justice have, besides that interest, another and special interest, in the character and qualifications of the members of the bar—who are considered in this country as officers of the courts. In fact, a proper administration of justice depends as largely upon the conscience, competence and conduct of the members of the bar, as upon the work of the men on the bench. The inherent power of the Supreme Court to admit or disbar attorneys at law may be aided and regulated by statute, but it cannot be thereby frustrated or destroyed. [In re Richards, 333 Mo. 907, 63 S. W. (2d) 672.]"

Another very recent case, Meunier v. Bernich (La. App. 1936), 170 So. 567 (Parish of Orleans), involved the right of the plaintiff to recover under his contract for services as "adjuster," a percentage of a sum which the defendants had received in settlement of their claim against a third party for the wrongful death of their minor child. The defense was that the contract was illegal because it contemplated the rendition of legal services by the plaintiff when he was not licensed as an attorney. Act 202 of the Louisiana Legislature in 1932 is somewhat similar to Section 11692, Revised Statutes 1929 (Mo. Stat. Ann., p. 621). In enumerating acts which constitute the practice of law the third clause includes "the doing of any act, in behalf of another, tend to obtain or secure for such other the prevention of the redress of a wrong, or the enforcement or establishment of a right, *except*, without resort to court proceedings, the enforcing, securing, settling, adjusting or compromising of defaulted, controverted or disputed accounts, or claims. . . ." The plaintiff contended that by force of the foregoing exception he was entitled to make the contract in suit and to render services thereunder.

The Louisiana Court of Appeal in its opinion conceded the Legislature had the right in the exercise of the police power to enact statutes regulating the practice of law; but further held such statutes could not deprive the Supreme Court of its inherent power to prescribe ultimate qualifications in addition to those fixed by the Legislature, for admission to the bar. In explaining the source of the legislative power in that behalf the opinion said: "Due to the fact that courts are not empowered to enact laws, the jurisprudence has approved legislation passed in aid of the courts' inherent powers."

The opinion also called attention to the fact that Article 85 of the Constitution of Louisiana vests exclusive original jurisdiction in the Supreme Court, "in all matters touching professional misconduct of members of the bar, with power to disbar under such rules as may be adopted by the court;" but further declared "notwithstanding

this express grant of power, we are also of opinion that the Legislature may, subject to the courts' approval, enact statutes in aid of the courts' powers and for this reason Act 202 of 1932 is constitutional with the exception of the clause relied upon by Meunier in the case at bar.''

And finally in this State in State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 865, 871, 74 S. W. (2d) 348, 357, 361, decided by this court en banc two years ago wherein the right of certain trust companies to practice law was contested by an action in the nature of *quo warranto*, it was unanimously held that Section 11692, supra, was enacted under the police power, and the respondent was convicted of engaging in the law business in violation thereof. But to that holding this sentence was added: ''In view of this conclusion we reserve a ruling upon the question of respondents' amenability to law independent of the statutes.''

Other cases recognizing the right of the legislative department in the exercise of the police power to enact statutes regulating the practice of law are: Danforth v. Egan (1909), 23 S. D. 43, 47, 119 N. W. 1021, 1022, 20 Ann. Cas. 418, 419, 139 Am. St. Rep. 1030, 1033; Keeley v. Evans (1921), 271 Fed. 520, 524; Gould v. State (1930), 99 Fla. 662, 666, 127 So. 309, 311, 69 A. L. R. 699, 701, 702; In re Eaton (1931), 60 N. D. 580, 591, 235 N. W. 587, 592; People ex rel. Ill. State Bar Assn. v. People's Stock Yards State Bank (1931), 344 Ill. 462, 474-5, 176 N. E. 901, 907 (12); People ex rel. Chicago Bar Assn. v. Motorist's Assn. of Ill. (1933), 354 Ill. 595, 599, 188 N. E. 827, 828; In re Myrland (Ariz. 1935), 45 Pac. (2d) 953, 954.

There are also decisions holding the courts recognize legislative acts regulating the practice of law only out of *comity* or generous acquiescence: State v. Cannon (1928), 196 Wis. 534, 538, 221 N. W. 603, 604; In re Greathouse (1933), 189 Minn. 51, 60, 248 N. W. 735, 739; Hanson v. Grattan (1911), 84 Kan. 843, 845, 115 Pac. 646, 647, 34 L. R. A. (N. S.) 240, 242; State Board of Law Examiners v. Phelan (1931), 43 Wyo. 481, 5 Pac. (2d) 263, 78 A. L. R. 1317, 1322. And a few cases appear to assert that the power of the courts to determine the qualifications of persons licensed to practice law is exclusive: State ex rel. Wright v. Barlow (Neb., 1936), 268 N. W. 95, 98 (5); People ex rel. Ill. State Bar Assn. v. People's Stock Yards State Bank, 344 Ill. l. c. 474, 176 N. E. l. c. 907.

It is stated in Vol. 19, No. 3, page 77 of the Journal of the American Judicature Society for October, 1935, that seventeen states have all-inclusive state bars organized by statute, as follows: Alabama, Arizona, California, Idaho, Kentucky, Louisiana, Michigan, Mississippi, Nevada, New Mexico, North Carolina, North Dakota, Oklahoma, Oregon, South Dakota, Utah and Washington. The California Act has been held constitutional several times. [State Bar of California v. Superior Court, 207 Cal. 323; In re Shattuck, 208 Cal. 6, 9, 279

Pac. 998, 1000; Brydonjack v. State Bank of California, 208 Cal. 1. c. 444, 281 Pac. 1. c. 1020, 66 A. L. R. 1. c. 1509.] Likewise the Idaho Act was sustained in part in In re Edwards, 45 Idaho, 676, 266 Pac. 665; the Washington Act in part in In re Bruen, 102 Wash. 472, 172 Pac. 1152; and the Nevada statute was recognized as constitutional in In re Scott (Nev.), 292 Pac. 291, decided in 1930. This legislation was hailed as a great advance. The American Bar Association is now fostering efforts to extend it to other states. But if the principal opinion is right in holding the Legislature cannot enter the field of bar regulation because it is exclusively a judicial function, all these laws are unconstitutional.

■ But the many decisions quoted and cited above clearly establish the proposition stated at the beginning of this discussion, that the legislative department may enact statutes regulating the legal profession as it does other professions and businesses. Such statutes are not passed merely in aid of the courts, as the Meunier case from Louisiana, supra, suggests. They are enacted through an exercise of the police power in aid of the *people*. Under the express provisions of Section 2, Article II, Constitution of Missouri, the people have the inherent, sole and exclusive right to regulate the internal government of the State and the policing thereof; and Section 5, Article 12 of the Constitution further declares the exercise of the police power shall never be abridged. The power is exercised through the General Assembly.

■ Courts do not exercise the police power. That is why they have no right to pass on the policy, wisdom or expediency of legislation (as the principal opinion states). But in addition to their exclusive power to determine justiciable controversies and the constitutionality of statutes involved therein, they have, as the Steckler case from Louisiana, supra, declares "another special interest." It is the inherent power to protect their own existence and functioning as constitutional courts, which includes the right to regulate the practice of law. They can make rules on that subject when there are no statutes, or supplementing statutes and imposing additional regulations. And they can strike down, as unconstitutionally usurping judicial power, any statute unreasonably encroaching upon, and therefore frustrating, their right to protect themselves. That was done in several of the cases cited above.

But it does not follow that the courts have the exclusive power to regulate the practice of law, or that they recognize legislation on that subject only out of comity. So far as is necessary to their self-protection the right of the courts is paramount or exclusive; but beyond that point the legislative department also has constitutional rights in the exercise of the police power. If the courts were lax and slothful in regulating the practice of law, it would hardly be contended lawyers would be left free to prey upon the public because,

forsooth, they are officers of the court, and that the legislative department would be helpless. An illustration of this is recorded in re Day, 181 Ill. 1. c. 86, 54 N. E. 1. c. 649, 50 L. R. A. 1. c. 524, where it is stated that "in 1455, by Stat. 33, Hen. VI, Chap. 7, Parliament limited the number of attorneys for Suffolk, Norfolk, and Norwich, reciting that the number had increased more than eighty 'most of whom, being not of sufficient knowledge, came to fairs, etc., inciting the people to suits for small trespasses.'" In this connection let it be understood we do not mean to say the Legislature can admit and disbar particular lawyers or determine their individual qualifications. That is exclusively a judicial function. What we are saying is that the legislative department has a voice in making the rules under which these things are done.

The ultimate objective of both departments may be the same—the good of the people in the administration of justice; but the powers are fundamentally different. The courts' power essentially is protective and self-serving; the legislative power is to advance the public welfare. And it will not do to say the Legislature can attain this and merely by passing punitive statutes. If it has the power to prescribe punishments for acts committed in the practice of law, it also has the power to define the acts for which those punishments are to be assessed, and to prohibit such acts without assessing any punishment, leaving it to the courts to discipline the offenders as their officers. On the other hand, the Legislature could, by passing a punitive statute affecting the practice of law, hamper and frustrate the courts; as if the General Assembly in this State should make it a punishable offense for a lawyer appointed by us to serve on a bar committee established by our Rule 36.

There is nothing novel in saying the constitutional validity of a statute regulating the practice of law depends upon whether it is a reasonable regulation or whether it unreasonably encroaches upon judicial powers. The courts have always applied the test of reasonableness to legislative acts involving an exercise of the police power. [12 C. J., sec. 443, p. 932; Standard Oil Co. v. Marysville, 279 U. S. 582, 584, 73 L. Ed. 856, 859, 49 Sup. Ct. 430; State v. Mo. Pac. Ry. Co., 242 Mo. 339, 354, 147 S. W. 118, 121; Valley Spring Hog Ranch Co. v. Plagmann, 282 Mo. 1, 18, 220 S. W. 1, 6.] Insofar as such laws affect the individual citizen they are measured against those sections of the State Constitution protecting personal rights, or the corresponding provisions in the amendments to the Constitution of the United States. But when such a statute affects the courts its reasonableness is measured against the provisions of the Constitution vesting judicial power in the courts, namely, Article III and Section 1, Article VI. Whether a statute unreasonably encroaches on judicial power is a judicial question to be decided by the courts.

It has been said that since courts have inherent power to

498

make rules regulating the practice of law, the Legislature cannot take that power away and supplant such rules by statutes. But that depends on whether the court regards the particular rule as vitally essential to its existence and functioning. Sometimes such rules are made *because* there is no statute on the point. It is not unprecedented for such powers to exist concurrently in different departments of the government. We have already called attention to the doctrine prevailing almost universally in the adoption of statutes and rules of court governing procedure. There is also an analogy in the law of interstate commerce. The power of Congress is paramount or exclusive in that field. But until Congress enters the field legislation by the states is valid, 12 Corpus Juris, section 14, page 16; and it is held that to have the effect of supplanting State legislation the Federal legislation must clearly cover the same subject matter or show a purpose to take legislative possession of the whole field. Indeed, it is said that such entrance of Congress into the field does not render the State regulation invalid, or repeal it, but merely suspends it. [12 C. J., sec. 15, p. 18.]

In the instant case the information charges the respondents with contempt of this court in practicing law before the Public Service Commission in violation of Sections 11692 and 11693, Revised Statutes 1929 (Mo. Stat. Ann., pp. 621, 622). As already stated Section 11692 defines the practice of law as including, among other things, the appearance in a representative capacity before any body, board, committee or commission constituted by law. The Public Service Commission is such a commission. It is the creature of the legislative department of the State exercising lawmaking powers, not judicial power in the constitutional sense. It owes its existence to that fact, for otherwise it would be an unconstitutional body usurping judicial power. [State ex rel. Mo. Pac. Railroad Co. et al. v. Public Service Comm., 303 Mo. 212, 219, 259 S. W. 445, 447; City of Cape Girardeau v. St. L.-S. F. Ry. Co., 305 Mo. 590, 604, 267 S. W. 601, 604.] Its members are not required to be lawyers.

Now certainly if the courts have inherent judicial power to regulate the practice of law, not only in cases pending in court, but also in the everyday office practice of a lawyer, such as the giving of legal advice and the preparation and execution of legal instruments which later may be involved in litigation—as many of the cases hereinbefore cited hold—then, by the same token, the legislative department has the inherent power to prescribe qualifications for those practicing before the Public Service Commission which exercises delegated legislative power. And since the Legislature has seen fit to provide that persons practicing before the commission shall be licensed attorneys, there is no sound basis for asserting the statute is an unconstitutional encroachment on judicial power. Particularly is this true when we stand ready to adopt the definition of practicing law embodied in the

statute, as the principal opinion does. We cannot hold the statute frustrates the exercise of judicial power and then immediately accept the statutory definition as our own.

On the contrary, there is good reason for saying the inherent power of this court does not extend far enough to entitle it to hold, independent of the statute, that persons practicing before the Legislature's delegated agent, the Public Service Commission, must be licensed by us. Undoubtedly this is true on the theory of the strict division of powers adopted in the principal opinion. It would hardly be contended we can make a rule permitting only licensed attorneys to appear in a representative capacity before legislative committees investigating facts preparatory to the enactment of statutes. The Ohio Court of Appeals in Public Service Traffic Bureau v. Haworth Marble Co. (1931), 178 N. E. 703, held that practice before the Interstate Commerce Commission is not practice of law, and the opinion points out that there are many other similar administrative bodies, State and Federal, before which laymen may practice. But it is unnecessary to go that far in this case. All we need to hold is that the statutes, Sections 11692 and 11693, supra, are valid legislative enactments passed in the exercise of the police power.

The brief of respondent Hull raises the point that Section 11695, Revised Statutes 1929 (Mo. Stat. Ann., p. 623), only authorizes this court to admit and license persons to practice as attorneys and counselors "in the courts of record' of this state." It is argued that by implication this denies us the right to license persons to practice as attorneys before boards and commissions which are not courts, and therefore, the correlative right to discipline persons who are not licensed attorneys for practicing law before such boards or commissions. But the Legislature has provided by statute that only licensed attorneys may so practice; and it has been decided in a number of cases that this court has inherent power to punish persons for contempt for violating a statute regulating the practice of law. [State ex rel. Wright v. Barlow (Neb.), 268 N. W. 1. c. 98; Rhode Island Bar Assn. v. Automobile Service Assn., 55 R. I. 1. c. 129, 179 Atl. 1. c. 142, 100 A. L. R. 1. c. 230, note; Re Morse, 98 Vt. 85, 94, 126 Atl. 550, 553, 36 A. L. R. 527, 532, note.]

The power is not in conflict with Section 11695, but merely goes beyond it, and is in harmony with the spirit of the cognate statutes, Sections 11692 and 11693. For these reasons I concur in the result of the principal opinion; but think the respondents should be held guilty of contempt of this court for violation of said Sections 11692 and 11693, supra, and that these statutes should not be treated as void and the conviction put on the ground that they have practiced law in violation of a definition formulated by us in the exercise of inherent power. *Hays, Tipton, Leedy* and *Collet, JJ.*, concur.

## ADDENDA

In practically all the State Constitutions there is a provision dividing the powers of government between the executive, legislative and judicial departments; and vesting the judicial power in the courts. The following is a brief summary of the constitutional and code provisions of the United States and the several states relative to the making of statutes or rules of practice and procedure.

UNITED STATES Judicial Act of 1789, 1 G. S., p. 83, sec. 17, provides all the courts in the United States shall have power . . . to make and establish all necessary rules for the orderly conducting business in said courts, provided such rules are not repugnant to the laws of the United States.

Addition to Judiciary Act, passed by second congress in 1793, 1 G. S., p. 335, sec. 7, authorizes the several courts of the United States from time to time . . . otherwise in a manner not repugnant to the laws of the United States, to regulate the practice of said courts respectively, as shall be fit and necessary for the advancement of justice, and especially to that end to prevent delays in proceedings.

5 Stat. at Large, p. 518. Acts supplementary to the judiciary act passed in 1842 giving the supreme court full power and authority generally to regulate the whole practice of the district and circuit courts.

1 Stat. at Large, pp. 93, 276; 4 Stat. at Large, p. 278. Acts regulating processes in the courts of the United States passed in 1789, 1792, 1828.

R. S. U. S. 1878 (2 Ed.), sec. 914, 28 U. S. C. A., sec. 724. Conformity Act passed in 1872 requiring pleadings and practices in the federal district courts in civil actions, other than equity and admiralty cases, to conform as near as may be to the pleading and practice of the courts of the state wherein the district court is held.

R. S. U. S. 1878 (2 Ed.), secs. 913, 917, 28 U. S. C. A., secs. 723, 730. Authorizes the Supreme Court of the United States, and subject thereto the district courts to make rules of practice in equity and admiralty cases "not inconsistent with the laws of the United States."

R. S. U. S. 1878 (2 Ed.), sec. 918, 28 U. S. C. A., sec. 731, authorizes the district courts to make rules of practice "not inconsistent with any law of the United States."

28 U. S. C. A., sec. 723a as last amended June 7, 1934, extended the rule making powers of the United States Supreme Court to certain proceedings in criminal cases, which rules supersede conflicting laws.

28 U. S. C. A., sec. 723b passed June 19, 1934, authorized the

Supreme Court to make general rules governing practice and procedure in civil actions at law, superseding conflicting laws.
28 U. S. C. A., sec. 723c authorized the Supreme Court to unite its general rules for cases in equity with those in actions at law so as to secure one form of civil action and procedure for both. Such united rules not to take effect until they shall have been reported to Congress by the Attorney General at the beginning of a regular session thereof and until after the close of such session.

ALABAMA  Sec. 6663, Code of 1928. Supreme Court has power to adopt rules of practice in all courts not contrary to provisions of Code.
Gen. Acts, 1935, p. 177. And power to adopt a new system of pleading, practice and procedure in actions and proceedings under equity jurisdiction.

ARIZONA  Sec. 3652, R. C. 1928. Supreme Court may make and adopt rules of practice for said court and the Superior Courts. But it is held these rules yield to any constitutional statute which does not unreasonably limit or hamper the courts. De Camp v. Cent. Ariz. L. & P. Co. (May, 1936), 57 Pac. (2d) 311, 312.

ARKANSAS  Crawford & Moses Stat. 1921, sec. 2171. The Supreme Court may make rules for the convenient dispatch of business, the preservation of order, the argument of cases, or motions, the manner and time of presenting motions or petitions for rehearing, the time of issuing its mandates and decisions and modes of enforcing its mandates and orders, and may change the same.

CALIFORNIA  Art. VI. Const. of 1879 (added by amendment in 1926) creates a judicial council with power to adopt or amend rules of practice and procedure for the several courts not inconsistent with laws that are now or that may hereafter be in force.

COLORADO  Sec. 444, Comp. Laws, 1921, p. 184. Supreme Court' shall prescribe rules of practice and procedure in all courts of record and may change or rescind same. Such rules supersede any statute in conflict therewith. Constitutionality upheld, Ernst v. Lamb, 73 Colo. 132, 213 Pac. 994.
Laws Colo. 1921, p. 680, amended above section by forbidding adoption of any rule allowing trial judges to comment on evidence given at trial. This amendment disregarded by Colo. Supreme Court by adoption of Rule 14b. See Kolkman v. People, 89 Colo. 8, 300 Pac. 575, and discussion of case in 27 Ill. Law Rev. p. 664.

CONNECTICUT  Sec. 5375, G. S. Conn. 1930. The Supreme Court of Errors makes rules of practice for its own regulation.
Secs. 5359, 5700. The judges of the Superior Court (a lower

court) adopt rules of practice and procedure "to carry into effect the provisions of the practice act," and governing appeals. But all the judges of the Supreme Court of Errors are also judges of the Superior Court.

DELAWARE  Secs. 3688, 3848, R. S. 1915; Laws Del. 1925, 4164, Sec. 1, p. 531. The chancellor for the court of chancery, and a majority of the other state judges for the Supreme Court and other designated subordinate courts, may make rules of practice and procedure.for said courts severally.

FLORIDA  Comp. Genl. Laws, 1927, sec. 4682, gives Supreme Court power to make, amend, annul or modify rules of practice or pleading of all courts as it may see fit, not inconsistent with law.

Laws Fla. 1931, p. 49, enacted new equity rules. Known as the "1931 Chancery Act."

GEORGIA  Code 1933, Sec. 2-3055 of the Constitution of Georgia provides for the transference of certain cases from the Supreme Court to the Court of Appeals "until otherwise provided by law . . . under such rules as the Supreme Court may prescribe."

Sec. 2-3009 with reference to the Georgia Court of Appeals provides in substance that the laws relating to the Supreme Court as to powers, practice and procedure, shall apply to the Court of Appeals except as otherwise provided in the Constitution or laws with respect to the latter court.

Sec. 2-4106 provides the rules of the respective courts, legally adopted and not in conflict with the Constitution of the United States or of this state, or the laws thereof, are binding and must be observed.

For powers of the Supreme Court to make rules see Sections 24-3901 (5) and 24-4016.

IDAHO  Const. of Idaho, 1889, Art. V, Sec. 13, authorizes the Legislature to provide a proper system of appeals, and regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done without conflict with this Constitution.

ILLINOIS  R. S. Ill. 1935, chap. 110, sec. 2. The new code of procedure in Illinois empowers the Supreme Court to make and amend rules of pleading, practice and procedure for itself and subordinate courts, these to be "supplementary to but not inconsistent with the provisions of this Act." See People v. Kelley, 347 Ill. 221, 233, 179 N. E. 898, 903, 80 A. L. R. 890, 897.

INDIANA  Art. VII, sec. 5, Const. of 1851. "The Supreme Court shall have jurisdiction, coextensive with the limits of the state,

in appeals and writs of error, under such regulations and restrictions as may be prescribed by law. It shall also have such original jurisdiction as the General Assembly may confer."

Art. VIII, sec. 20. "The General Assembly at its first session after the adoption of this Constitution, shall provide for the appointment of three Commissioners, whose duty it shall be to revise, simplify and abridge the rules, practice, pleadings and forms, of courts of justice. And they shall provide for abolishing the distinct forms of action at law, now in use; and that justice shall.be administered in a uniform mode of pleading, without distinction between law and equity."

Baldwin's Indiana Stat. 1934, sec. 1317. The Supreme Court "shall have authority: to frame, direct, and cause to be used, all process; to establish modes of practice which may be necessary in the exercise of its authority, and to make regulations respecting the same, and cause them to be printed. . . . Fourth. To establish regulations respecting proceedings which are requisite in such court in the exercise of its authority, not specially provided for by law.

Ibid. Sec. 1384. "The chief justice of the Supreme Court, as soon as may be, shall convene the judges of the appellate court, and they shall adopt the same uniform rules of practice as govern the Supreme Court.

IOWA   Const. of Iowa, 1857, Art. V, Sec. 14. Provides it shall be the duty of the General Assembly to provide for the carrying into effect of this Article, and to provide for a general system of practice in all the courts of this state.

KANSAS   R. S. Kan. 1923, Sec. 60-3825. The judges of the Supreme Court may make and amend, from time to time, such further rules for the regulation of procedure in the supreme court and inferior courts consistent with this code, as they may deem proper. See Jones v. Menefee, 28 Kan. 436, 437; Craig v. Craig, 110 Kan. 13, 17, 202 Pac. 594, 596.

KENTUCKY. Const. 1891, Sec. 110. The Court of Appeals shall have appellate jurisdiction only, which shall be co-extensive with the state, under such restrictions and regulations not repugnant to this Constitution, as may from time to time be prescribed by law. Said court shall have power to issue such writs as may be necessary to give it a general control over inferior jurisdictions.

Carroll's Ky. Stats. 1936, sec. 949. "Power is vested in court of appeals to . . make rules consistent with law, for the government of its proceedings. . ." 148 Ky. 774, 147 S. W. 418; 257 Ky. 60, 77 S. W. (2d) 351.

LOUISIANA   Const. 1913, Art. 85. "The Supreme Court . . . shall have exclusive original jurisdiction in all matters touch-

ing professional misconduct of members of the bar, with power to disbar under such rules as may be adopted by the court."

2 La. Stat. 1920, p. 1014, Sec. 10. "The Supreme Court shall have full power to establish and enforce such rules (not inconsistent with law) as may be necessary to secure the regular and expeditious disposition of its business, and the preparation of proper and correct transcripts of appeal."

Sec. 14. The rules adopted by the Supreme Court shall be entered in the minutes of the court, and a copy thereof posted in the clerk's office and one in the court room.

MAINE   R. S. 1930, Sec. 2, p. 1258. The supreme judicial court may exercise its jurisdiction according to the common law not inconsistent with the Constitution or any statute.

MARYLAND   Const. 1867, Art. IV, Sec. 18. The judges of the Court of Appeals are directed to devise and promulgate rules for equity pleading and practice. Such rules and regulations have the force of law until rescinded, changed or modified by said judges, or the General Assembly.

Code Sup. 1927-35, Art. 26, Sec. 35-a, enacted in 1927 authorizes the Court of Appeals to prescribe rules of practice and procedure in actions at law. Such rules may be rescinded, changed or modified by the Court of Appeals or by the General Assembly of Maryland. The constitutionality of this act has sometimes been doubted since Art. IV, Sec. 18 of the constitution authorizes the making only of *equity* rules.

MASSACHUSETTS   2 G. L. 1932, p. 2663, sec. 3. The courts shall, respectively, make and promulgate uniform codes of rules consistent with law, regulating the practice and conducting the business of such courts in cases not expressly provided for by law, for the following purposes: "First, Simplifying and shortening pleading and procedure" (and ten other items).

MICHIGAN   Const. 1908, Art. VII, Sec. 5. The Supreme Court shall by general rules establish, modify and amend the practice in such court and in all other courts of record, and simplify the same. The legislature shall, as far as practicable, abolish distinctions between law and equity proceedings. See 3 Comp. Laws, Mich. 1929, Sec. 13540; Pub. Acts Mich., 1929, p. 56, Act 27.

MINNESOTA   Const. Art. VI, Sec. 14. Legal pleadings and proceedings in the courts of this state shall be under the direction of the Legislature.

MISSISSIPPI   Code 1930, Vol. 1, Sec. 3377. "The Supreme Court shall have power to make such rules in respect to making out all records for said court as may be expedient, and may prescribe the form and manner in which records shall be prepared for appeal. . . And the court may prescribe the mode of

pleading in causes therein, civil and criminal, and the manner of trying the same; and may also establish such rules of practice and proceedings therein as may be deemed necessary and proper for certainty and dispatch of business, and may dismiss causes for noncompliance with any of the rules; but such rules must be consistent with law."

MISSOURI Sec. 15, Art. VI, Const. 1875. In connection with the establishment of the St. Louis Court of Appeals provides: "All laws relating to the practices in the Supreme Court shall apply to this court, so far as the same may be applicable."

Sec. 27, Art. VI, authorizes the judges of the circuit court of St. Louis County to "sit in general term, for the purpose of making rules of court." It was held these rules must conform to statute. State ex rel. v. Withrow, 133 Mo. 500, 34 S. W. 245.

Sec. 3, Amendment of 1890 to said Article VI divided the supreme court into two divisions. It says: "All laws relating to practice in the Supreme Court, as well as the rules of the Supreme Court, shall apply to each division so far as they may be applicable thereto."

Laws 1917, sec. 53, Art. IV, under a subcaption: "Limitation on Legislative Power" forbids the passage of local or special laws "regulating the practice or jurisdiction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts. . . ." At the close of the section clause 32 says: "In all other cases where a general law can be made applicable, no local or special law shall be enacted."

MONTANA Constitution of 1889, Art. VIII, Sec. 2. "The Supreme Court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state, and shall have a general supervisory control over all inferior courts, under such regulations and limitations as may be prescribed by law." Under this section the legislature has power to provide mode of procedure. State ex rel. Whiteside v. District Court, 24 Mont. 539, 563, 63 Pac. 395; Finlen v. Heinze, 27 Mont. 107, 113, 69 Pac. 829, 70 Pac. 517.

R. C. 1935, Ann. Sec. 8845. "Every court of record may make rules, not inconsistent with the laws of this state, for its own government and the government of its officers . . . In case of the failure or refusal of any district court to adopt and promulgate rules of court, the supreme court may" do so.

NEBRASKA Const. 1875, Art. V, Sec. 25 (adopted 1920). The Supreme Court may promulgate rules of practice and procedure for all courts, uniform as to each class of courts, and not in conflict with laws governing such matters.

NEVADA 4 Nev. Comp. Laws, 1929, p. 2427, sec. 8377. The Supreme Court may make rules not inconsistent with the constitu-

tion and laws of the state for its own government and the government of the district court; but such rules shall not be enforced until 30 days after their adoption and publication.

It is held that such rules are binding unless in conflict with some statute. Am. Sodium Co. v. Shelley, 51 Nev. 26, 30, 267 Pac. 497.

NEW HAMPSHIRE 2 P. L. New Hamp. 1926, Chap. 315, Sec. 2, provides the Supreme Court shall do and perform all the duties reasonably requisite and necessary to be done by a court of 'final jurisdiction of questions of law and general superintendence of inferior courts.

Chap. 316, sec. 7, authorizes the superior court from time to time to establish rules and orders of practice, consistent with the laws, for conducting and regulating its business, and may prescribe forms of proceedings in all cases not provided for.

NEW JERSEY 2 Cum. Supp. to C. S., p. 2820, Sec. 163-308. The Supreme Court shall prescribe rules for that court and for the circuit court and court of common pleas to give effect to the provisions of this Act and to otherwise simplify judicial procedure. Such rules shall supersede (so far as they conflict with) statutory and common law regulations heretofore existing.

Laws N. J. 1915, Chap. 116, Sec. 11, p. 186. The chancellor may make procedural rules in the court of chancery which shall supersede (so far as they conflict with) statutory and other regulations heretofore existing. See Weinberger v. Goldstein, 99 N. J. Eq. 1, 7, 132 Atl. 659, 661.

NEW MEXICO Laws 1933, chap. 84, p. 147. The Supreme Court of the state of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico. Statute held constitutional in State v. Roy (July, 1936), 60 Pac. (2d) 646, 658.

NEW YORK Const. of 1894, Art. VI, Sec. 20, amendment adopted Nov., 1925. Except as herein otherwise provided, the legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and equity that it has heretofore exercised.

Const. Laws, 1909, Chap. 35, Secs. 93 and 94, p. 1898. The justices of the Appellate Division of the New York Supreme Court at biennial conventions establish rules of practice not inconsistent with "this chapter or the code of civil procedure" which are binding on all the courts of the state except the Court of Appeals, the highest court.

By Secs. 51 and 83 of the same Act the Court of Appeals makes rules and regulations governing the practice therein; and under

Sec. 53 of the same Act makes rules, not inconsistent with the constitution and statutes of the states regulating the admission of attorneys to practice in all the courts of record of the state.

NORTH CAROLINA   Const. of 1868, Art. IV, Sec. 12. The General Assembly shall have no power to deprive the judicial department of any power or jurisdiction which rightfully pertains to it as a coordinate department of the government; may distribute the judicial power not pertaining to the Supreme Court among subordinate courts; and may regulate by law, when necessary, the methods of proceeding in the exercise of their powers, of all the courts below the Supreme Court, so far as the same may be done without conflict with other provisions of this Constitution.

NORTH DAKOTA   1913-25 Sup. to Comp. Laws, sec. 769a6, p. 326. The Supreme Court shall, in the exercise of its supervisory control over district courts, adopt uniform rules of procedure for all of the district courts in each of the several judicial districts within the state.

OHIO   Since 1853 the Supreme Court has made rules regulating proceedings in all the probate courts of Ohio under Laws Ohio 1852-3, p. 171, chap. 3, sec. 14; Code of Ohio, 1930, Sec. 1591; Laws Ohio, 1931, p. 323, Sec. 10501-13.

OKLAHOMA   1 Ok. Stat. 1931, Chap. 1, Art. I, Sec. 23. The justices of the Supreme Court shall meet every two years during the month of June at the Capital of the State and revise their general rules, and make such amendments thereto as may be quired to carry into effect the provisions of this code, and shall make such further rules consistent therewith as they may deem proper. The rules so made shall apply to the Supreme Court, the district courts, the superior courts, the county courts, and all other courts of record.

OREGON   Code 1930, Sec. 28207. The Supreme Court shall have power to make and enforce the rules necessary for the prompt and orderly dispatch of the business of the court, and the remanding of causes to the court below.

PENNSYLVANIA   Purdon's Pa. Stats. 1936, Title 17, Chap. 1, Sec. 41, gives the Supreme Court of Pennsylvania power ''generally, to minister justice to all persons, in all matters whatsoever, as fully and amply to all intents and purposes, as the said court has heretofore had power to do, under the Constitution and laws of this commonwealth.''

By the Act of May 22, 1722, 3 Pa. Stat. At Large, Chap. CCLV, p. 303, the powers of the Court of King's Bench of Great Britain were continued in the courts of Pennsylvania; and hence the Supreme Court is held to have power to make rules; but so far has made only general rules of equity practice, which do not supplant any statutory code of practice.

RHODE ISLAND   Const. 1842. Amendment of 1903. The Supreme Court shall have final revisory and appellate jurisdiction upon all questions of law and equity. It shall have power to issue prerogative writs, and shall also have such other jurisdiction as may, from time to time, be prescribed by law.

Gen. Laws, 1923, Sec. 4651, p. 1365. "Each of said courts (the supreme and superior courts) by a majority of its members, may from time to time make and promulgate rules for regulating practice and conducting business therein, in matters not expressly provided for by law.   The rules of the superior courts shall be subject to the approval of the Supreme Court.

SOUTH CAROLINA   Const. 1895, Art. VI, Sec. V, provides the general assembly shall appoint a commissioner who shall codify the general statutes including the code of civil procedure beginning in 1901 and decennially thereafter, reporting the result of his labors to the General Assembly with recommendations.   The code shall be adopted by the General Assembly as the only general statutory law of the state, any alterations or additions being made only by bill formally passed as required by law.

Code 1932, Vol. 1, p. 17, Sec. 28 (4) provides "the (supreme) court shall have full power and authority to establish and promulgate such rules and regulations as may be necessary to carry into effect the provisions of this section and to facilitate the work of the Supreme Court."

SOUTH DAKOTA   Const. 1889, Art. V, Sec. 2, "The Supreme Court, except as otherwise provided in this Constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law."

Sec. 34, Art. V, "All laws relating to courts shall be general and of uniform operation throughout the state, and the organization, jurisdiction, power, proceedings and practice of all the courts of the same class or grade, so far as regulated by law, and the force and effect of the proceedings, judgments and decrees of such courts, severally shall be uniform."

Comp. Laws, 1929, Vol. 1, Sec. 2504-a. "The Supreme Court shall, on or before the first day of July, 1919, establish rules of practice in civil and criminal actions governing the mode of trial and instructing juries in both civil and criminal actions not inconsistent with the laws of this state, which rules shall be binding on all courts of record having jurisdiction in civil or criminal action." The Supreme Court may at any time "thereafter revise such rules and make such amendments thereto or such further rules as it may deem necessary."

TENNESSEE   Code of 1932, Art. V, Sec. 9928, p. 2102. ''The Supreme Court may, from time to time, adopt, promulgate and publish in the Tennessee reports, rules to regulate the procedure, practice and pleading in the circuit court and/or superior criminal courts, for the purpose of simplifying same and of promoting speedy determination of litigation upon its merits. Such rules shall not become effective until six months after their adoption by said court. However, nothing in this section shall be construed to vest in the Supreme Court power to abrogate, suspend or modify any statutory rule of practice, and no rules shall be adopted or promulgated unless by unanimous vote of the Supreme Judges.''

TEXAS   Const. of Texas of 1876, Art. V, Sec. 25, amended August, 1891. The Supreme Court shall have power to make and establish rules of procedure not inconsistent with the laws of the state, for the government of said court and the other courts of this state to expedite the dispatch of business therein.

UTAH   R. S. 1933, Sec. 20-2-4. The (supreme) court may make rules of practice and procedure not in conflict with law, which rules shall be published.

Sec. 20-7-4. Every court of record may make rules, not inconsistent with the law, for its own government and the government of its officers; but such rules must neither impose any tax or charge upon any legal proceeding nor give any allowance to any officer for services.

Sec. 20-7-5. The rules adopted by any court take effect 30 days after their publication.

VERMONT   p. 1. 1933, Sec. 1244. The justices of the Supreme Court, the superior judges, the judges of municipal courts, and the judges of probate shall each establish general rules of practice applicable to their courts and may modify, alter or amend such rules.

Sec. 1351. The justices of the supreme court shall make, adopt and publish and may alter or amend rules regulating the admission of attorneys to the practice of law before the courts of this state.

VIRGINIA   Code of Va. 1930, Secs. 5960, 5960a, Code of 1849, p. 625, sec. 4. Since 1849 a statute has authorized the Supreme Court of Appeals to make general regulations for the practice of all the courts.

WASHINGTON   Laws Washington, 1925, Ex. Sess., p. 127, Rem. 1927, Sup. Sec. 13-1. Supreme Court given power to prescribe rules governing pleading and practice for all courts. Constitutionality upheld. State ex rel. Foster-Wyman Lbr. Co. v. Superior Court, 148 Wash. 1, 267 Pac. 770.

WEST VIRGINIA   Acts of W. Va. 1935, Chap. 37, p. 169. ''The

Supreme Court of Appeals may, from time to time, make and promulgate general rules and regulations governing pleading, practice and procedure in such courts and in all other courts of record of this State. . . All rules promulgated by the Supreme Court of Appeals under the authority of this section shall, before taking effect, be referred to the chairman of the judicial council, the president of the West Virginia Bar Association and to the Judge of every court affected thereby. In the events a hearing is requested, within 25 days after such reference, by any five of the persons so designated, the Supreme Court of Appeals shall thereupon designate a day when a hearing on the matter of the adoption of such rules shall be held. In the event no hearing is requested, or, if requested, after such hearing, the Supreme Court of Appeals shall be free to adopt or reject the proposed rules.''

WISCONSIN    Wis. Stat. 1935, Sec. 251.18. The Supreme Court shall by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of Wisconsin, for the purpose of simplifying the same and of promoting the speedy determination of litigation upon its merits.

Rules do not become effective until sixty days after their adoption by the court. No rule modifying or suspending statutory rules shall be adopted without a public hearing after notice by publication for four successive weeks. Nothing in this section shall ''abridge the right of the Legislature to enact, modify or repeal statutes or rules relating to pleading, practice or procedure.'' Statute held constitutional in In Re Constitutionality of Sec. 251.18 Wis. Stats., 204 Wis. 501, 236 N. W. 717.

WYOMING    Const. 1890, Art. V, Sec. 2. The Supreme Court shall have general appellate jurisdiction co-extensive with the state, in both civil and criminal causes, and it shall have a general superintending control over all inferior courts, under such rules and regulations as may be prescribed by law.

R. S. 1931, Sec. 31-107. The Supreme Court may prescribe rules of practice for said court not inconsistent with the constitution or laws of this state, and when such rules are adopted by the court, the same shall be binding upon the court and attorneys thereof, and the parties having business therein, as though the same were enactments of the Legislature of the state. The Supreme Court may, also, prescribe forms of process to be used in said court, not inconsistent with the Constitution or laws of this state, and regulations for the keeping of the records and proceedings thereof.